PJS:BB:nl

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL NO. 3:12CR224 |
| | ) |
| v. | ) |
| | ) |
| RICHARD J. HARLEY, | ) |
| | ) |
| Defendant. | ) |

FILED
HARRisburg

AUG 3 0 2012

PER_____

DEPUTY CLERK

### I N D I C T M E N T

### COUNTS ONE THROUGH FIFTEEN
### (WIRE FRAUD)

**THE GRAND JURY CHARGES:**

### I.   THE DEFENDANT

1.   The defendant, Richard J. Harley ("Harley"), represented himself as the Chief Executive Officer of RJH and Company, Inc. ("RJH").  Harley claimed that RJH was a "vertically integrated privately held holding company owning, controlling, leasing, developing, and administering assets in commercial and residential real estate, petroleum products, and commodities." RJH is a New Jersey Corporation which was incorporated by Harley in 1989.

2.   Harley claimed that the principal asset of RJH was approximately ten million barrels of oil located in Brown County,

Texas, which were "wholly owned by RJH" worth "in excess of $1 billion."

3.  Harley also claimed that RJH owned "investment grade debt instruments valued in excess of $1 billion," that RJH had "unrestricted bond power over Federal Reserve Bank instruments" worth "more than $700 billion," and that he had authority to negotiate two U.S. Treasury $500 million checks issued by the Federal Reserve Bank of New York.

4.  Harley also claimed that he personally owned valuable oil paintings worth in excess of $1 million.

## II.  **THE SCHEMES TO DEFRAUD**

A.  **The Oil Scheme**.

5.  Starting sometime in 1999, the exact date being unknown to the grand jury, Harley executed and attempted to execute a scheme and artifice to defraud individuals and/or financial and other lending institutions of money and property by soliciting and obtaining money under false pretenses, representations, and promises in connection with oil supposedly owned by RJH in Brown County, Texas.

6.  In order to induce individuals and/or financial and lending institutions to loan RJH money, Harley falsely claimed

that RJH owned approximately ten million barrels of oil in Texas
worth in excess of $1 billion.  Harley further represented that
he needed money to extract the oil from the ground and would pay
investors up to ten times their investment from the proceeds of
the sale of the oil once it was recovered.  In reality, neither
RJH nor Harley owned any oil reserves in Texas and neither Harley
nor RJH ever intended to repay the victims on their "loans."
Once Harley received the money, he simply used it for personal
expenses, unrelated to the oil he claimed RJH owned in Texas.

7.  To support RJH's false claims of ownership, Harley
provided individuals via email over the internet and by other
methods with various fraudulent paperwork, including, but not
limited to a "certified copy" of a promissory oil production note
in the amount of $200 million payable to RJH from Enpetro LPC,
Inc., a defunct oil company based in Texas; an assignment of
collateral between Enpetro LPC and RJH concerning ten million
barrels of oil reserves in Brown County, Texas; and an oil
reserve analysis authored by a petroleum geologist Harley hired
indicating that certain oil reserves purportedly backing the note
was worth in excess of $1 billion.  As Harley well knew, the oil
production note and assignment of collateral were worthless, RJH
did not own any oil reserves in Texas, and RJH had no right to

-3-

extract any oil from the ground and sell it as promised to investors.

8. It was further part of the scheme to defraud that Harley induced the victims to lend RJH money by providing the victims with a series of fraudulent documents, including, but not limited to, "secured corporate promissory notes" in the name of RJH and "joint venture agreements" between RJH and/or Harley and the victim in which Harley solicited the victim to loan RJH money and participate in a "private placement program" based upon the purported value of the Enpetro LPC note which promised to pay the victim up to ten times the amount of money loaned to Harley and/or RJH within a short period of time. Harley also promised to transfer an ownership interest in artwork he claimed was worth more than $1 million to one victim to ensure repayment on the RJH notes, and promised to make a $500,000 donation, as well as a $1.5 million loan to a Temple one victim was associated with from the profits RJH was supposedly going to generate.

9. It was further part of the scheme that once the RJH notes to the victim were due, Harley would refuse to pay, make more promises and guarantees which he never intended to fulfill, and issue more "secured promissory notes" promising to pay more and more money to the victim at a later point in time.

-4-

10.   It was further part of the scheme that Harley attempted
to conceal the fact that he had stolen the victim's money and
attempted to avoid paying the victim any money by filing
petitions in the United States Bankruptcy Court seeking to have
his and RJH's debts to the victim discharged.

11.   It was further part of the scheme that in 1999, Harley
attempted to defraud South Trust Bank in Tuscaloosa, Alabama,
into providing him a "safekeeping receipt" for the $200 million
oil production promissory note in connection with a fraudulent
attempt by Harley to obtain money from investors using the
promissory note as security for their investments.

12.   It was further part of the scheme that between
September 2006 and June 2009, Harley obtained approximately
$267,500 from three different victims of the oil scheme who wired
money into a Merrill Lynch Pierce Fenner & Smith brokerage
account controlled by Harley, or otherwise provided him with
checks or cash in connection with the oil scheme.   In addition to
the false representations referenced above, Harley never
disclosed to any of his victims that he had unpaid debts to the
SEC and the United States in excess of $1 million, in connection
with a prior fraudulent investment scheme where he was convicted
in federal court for defrauding patients and investors by

-5-

promoting an unsafe and untested "ozone/oxygen enema therapy" for AIDS/HIV patients.

**B.   The Treasury Check Scheme.**

13.   Harley falsely claimed that RJH owned valuable bank instruments totaling more than $700 billion and solicited financial and other lending institutions to negotiate and deposit those funds, manage those funds, and lend RJH money against those funds.   Harley also falsely claimed that he had authority to negotiate those funds on behalf of RJH and the payees listed on the bank instruments.   Harley generally communicated with the financial and other lending institutions via telephone calls and/ or emails over the internet.

14.   For example, in April 2009, Harley attempted to deposit two $500 million U.S. Treasury checks purportedly issued by the Federal Reserve Bank of New York and payable to "Joseph Teo Hui Kiat" into an investment account he maintained along with RJH at Merrill Lynch, Pierce Fenner and Smith ("MLPF&S") in Wayne, Pennsylvania.   MLPF&S refused to deposit the checks, informed Harley the checks were fraudulent, and closed his account.

15.   In April 2009, Harley again attempted to deposit the two $500 million checks purportedly issued by the Federal Reserve

-6-

Bank of New York into a brokerage account he attempted to set up
at LPL Financial, a securities broker/dealer located in San
Diego, California.  LPL Financial also refused to open an account
for Harley and refused to deposit the checks.

16.  In March and April 2011, Harley contacted officials at
the Federal Reserve Bank of Atlanta and the Federal Reserve Bank
of New York and provided those officials with copies of the two
$500 million checks and associated paperwork and demanded payment
on the checks.  Harley was informed that the checks were
fraudulent and part of a well-known scheme to defraud the Federal
Reserve Bank.

17.  In March 2012, Harley again attempted to deposit the
two fraudulent $500 million checks into an account he attempted
to set up at State Street Alternative Investment Solutions
("State Street") located in Boston, Massachusetts.  Harley stated
to State Street that he wanted to deposit the checks and have
State Street lend him money against the checks and manage $500
billion in assets he controlled.  Harley provided State Street
various fraudulent documentation in order to induce State Street
to accept the checks and lend him money.  State Street refused to
open the account and refused to lend Harley any money.

-7-

C.   **The Bankruptcy Fraud Scheme**.

    18.   In an effort to defraud Harley's and RJH's creditors, to conceal his and RJH's assets and liabilities, and to execute the oil scheme against Victim #1, Harley engaged in a continuing course of fraudulent conduct which included the filing of three bankruptcy petitions in the U.S. Bankruptcy Court for the Middle District of Pennsylvania.

    19.   On or about November 9, 2009, an individual, referred to in this Indictment as Victim #1, filed a lawsuit against RJH, Harley, and Harley's wife in the Court of Common Pleas of Lehigh County, Pennsylvania, wherein Victim #1 alleged that RJH, Harley, and Harley's wife defrauded him in connection with $239,500 he gave to Harley in the oil scheme.  According to the lawsuit, Harley and RJH promised to pay Victim #1 over $1 million pursuant to various "secured corporate promissory notes" and "joint venture agreements," but failed to do so.  On August 8, 2011, judgment was entered in favor of Victim #1 against RJH, Harley, and Harley's wife, in the amount of $1,140,000 as of July 2, 2009, plus interest thereon after that date at the rate of six percent per year.

    20.   For the purpose of concealing the fact that RJH never intended to pay the promised return and that Victim #1's money

had been stolen and diverted to Harley's personal use, Harley filed two petitions on behalf of RJH in the United States Bankruptcy Court for the Middle District of Pennsylvania, which were filed under Title 11 of the Bankruptcy Code, wherein Harley attempted to discharge the debts owed to Victim #1, to wit:   In Re: RJH and Company, Inc., 5:10-BK-09451-RNO ("the 2010 petition"); and In Re: RJH and Company, Inc., 5:11-BK-02060-JJT ("the 2011 petition").

21.   In both the 2010 and 2011 petitions, Harley listed Victim #1 as a creditor in the amount of $2 million.   Harley also falsely represented that RJH had assets totaling $765 million, including approximately 10 million barrels of proven oil reserves valued at $700 million.

22.   On or about May 29, 2012, Harley filed a personal bankruptcy petition in the United States Bankruptcy Court for the Middle District of Pennsylvania, which was filed under Title 11 of the Bankruptcy Code, wherein Harley attempted to discharge a debt owed to the Northslope III Owners' Association in the amount of $37,793.61.   Harley made numerous false statements in his petition, including (1) failing to list any position in RJH; (2) failing to list Victim #1 as a creditor, despite Victim #1 having obtained an unpaid judgment against Harley on August 8, 2011, for

-9-

over $1 million; (3) failing to list any art work, including an

oil painting attributed to J. Lee Settlemeyer known as

"Liberation, The Lady," which Harley claimed to Victim #1 was

worth approximately $1.8 million and an oil painting by Titian

which Harley also claimed to own; (4) failing to list the SEC as

a creditor, despite the SEC having obtained an unpaid judgment

against Harley on January 4, 2008, for over $1 million; and

(5) failing to list the United States as a creditor, despite the

United States having obtained an unpaid restitution judgment in

the amount of $168,152 and a special assessment judgment of $650

against Harley on March 30, 2001.


### III.   STATUTORY ALLEGATIONS

23.   From on or about 1999 until the date of this

Indictment, in the Middle District of Pennsylvania and elsewhere,

the defendant,

### RICHARD J. HARLEY,

knowingly and willfully devised and intended to devise a scheme

and artifice to defraud, and to obtain money and property by

means of materially false and fraudulent pretenses,

representations, and promises and for the purpose of executing

the scheme and artifice to defraud and to obtain money and

-10-

property and attempting to do so, did on or about the dates
specified below, transmit and cause to be transmitted by means of
wire and radio communication in interstate and foreign commerce,
certain writings, signs, signals, pictures, and sounds, as more
particularly described in each count below:

| Count | Date | Nature of Wire Transmission | Sender | Recipient |
|-------|------|-----------------------------|--------|-----------|
| 1 | 07/24/08 | Wire transfer $35,000 | Embassy Bank, Bethlehem, PA, account of Victim #1 | MLPF&S, Wayne, PA, account of RJH and Co. |
| 2 | 09/04/08 | Wire transfer $15,000 | Embassy Bank, Bethlehem, PA, account of Victim #1 | MLPF&S, Wayne, PA, account of RJH and Co. |
| 3 | 02/13/09 | Wire transfer $10,000 | Embassy Bank, Bethlehem, PA, account of Victim #1 | MLPF&S, Wayne, PA, account of RJH and Co. |
| 4 | 02/17/09 | Wire transfer $10,000 | Embassy Bank, Bethlehem, PA, account of Victim #1 | MLPF&S, Wayne, PA, account of RJH and Co. |
| 5 | 03/24/09 | Wire transfer $3,500 | Embassy Bank, Bethlehem, PA, account of Victim #1 | MLPF&S, Wayne, PA, account of RJH and Co. |

-11-

| Count | Date | Nature of Wire Transmission | Sender | Recipient |
|-------|------|-----------------------------|--------|-----------|
| 6 | 12/20/07 | Wire transfer $10,000 | Hughes Aircraft Emp. FCU, CA, account of Victim #2 | MLPF&S, Wayne, PA, account of RJH and Co. |
| 7 | 12/16/08 | Wire transfer $3,000 | Citibank, N.A., NY, NY, account of Victim #3 | MLPF&S, Wayne, PA, account of RJH and Co. |
| 8 | 12/22/08 | Wire transfer $5,000 | Citibank, N.A., NY, NY, account of Victim #3 | MLPF&S, Wayne, PA, account of RJH and Co. |
| 9 | 05/16/09 | Email containing images of two Federal Reserve checks and supporting documentation | rjhco@verizon.net | Victim#3@cassell e.com |
| 10 | 04/28/09 | Email containing Financial Guarantee Agreement from Prudential Life Assurance | rjhco@verizon.net | Victim#3@cassell e.com |
| 11 | 05/04/10 | Email containing RJH and Co. corporate profile | rjhco@verizon.net | Victim#4@gmail.c om |

| Count | Date | Nature of Wire Transmission | Sender | Recipient |
|-------|------|-----------------------------|--------|-----------|
| 12 | 04/20/09 | Email containing images of two Federal Reserve checks and supporting documentation | rjhco@verizon.net | Victim#5@ml.com |
| 13 | 04/03/12 | Email containing RJH and Co. corporate profile and supporting documentation | mprllc1@yahoo.com | Victim#6@statestreet.com |
| 14 | 04/28/09 | Email containing images of two Federal Reserve checks and supporting documentation | rjhco@verizon.net | Victim#7@1pl.com |
| 15 | 04/18/11 | Four emails containing images of two Federal Reserve checks, supporting documentation, and cash payment demand for $1 billion | r.harley@rjhco3.com | Victim#8@ny.frb.org |

Each count in violation of Title 18, United States Code, Section 1343.

### COUNT SIXTEEN

#### (BANKRUPTCY FRAUD)

**THE GRAND JURY FURTHER CHARGES:**

24. The allegations contained in paragraphs 1 through 22 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

25. On or about November 22, 2010, in the Middle District of Pennsylvania, the defendant,

**RICHARD J. HARLEY,**

with the intent to devise a scheme and artifice to defraud Victim #1, and for the purpose of executing and concealing said scheme and artifice, filed a petition under Title 11, United States Code, which was titled, In Re: RJH and Company, Inc., 5:10-BK-09451-RNO.

In violation of Title 18, United States Code, Section 157(1).

## COUNT SEVENTEEN

### (BANKRUPTCY FRAUD)

**THE GRAND JURY FURTHER CHARGES:**

26.    The allegations contained in paragraphs 1 through 22 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

27.    On or about March 24, 2011, in the Middle District of Pennsylvania, the defendant,

### RICHARD J. HARLEY,

with the intent to devise a scheme and artifice to defraud Victim #1, and for the purpose of executing and concealing said scheme and artifice, filed a petition under Title 11, United States Code, which was titled, <u>In Re: RJH and Company, Inc.</u>, 5:11-bk-02060-JJT.

In violation of Title 18, United States Code, Section 157(1).

## COUNT EIGHTEEN

### (FALSE STATEMENTS)

**THE GRAND JURY FURTHER CHARGES:**

28.    The allegations contained in paragraphs 1 through 22 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

-15-

29.   On or about November 22, 2010, in the Middle District of Pennsylvania, the defendant,

**RICHARD J. HARLEY,**

knowingly and fraudulently made a material false declaration, certificate, verification, and statement under penalty of perjury, as permitted under Section 1746 of Title 28, in or in relation to a case under Title 11, to wit:   <u>In Re: RJH and Company, Inc.</u>, 5:10-BK-09451-RNO, by (1) submitting a schedule of assets of RJH and Company, Inc., stating RJH had assets totaling $765 million, including approximately 10 million barrels of proven reserves valued at $700 million, when in truth and in fact, as Harley well knew, such statements were false.

In violation of Title 18, United States Code, Section 152(3).

<u>**COUNT NINETEEN**</u>

**(FALSE STATEMENTS)**

**THE GRAND JURY FURTHER CHARGES:**

30.   The allegations contained in paragraphs 1 through 22 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

31.   On or about March 24, 2011, in the Middle District of Pennsylvania, the defendant,

-16-

**RICHARD J. HARLEY,**

knowingly and fraudulently made a material false declaration, certificate, verification, and statement under penalty of perjury, as permitted under Section 1746 of Title 28, in or in relation to a case under Title 11, to wit:   <u>In Re: RJH and</u> <u>Company, Inc.</u>, 5:11-BK-02060-JJT, by (1) submitting a schedule of assets of RJH and Company, Inc., stating RJH had assets totaling $765 million, including approximately 10 million barrels of proven reserves valued at $700 million, when in truth and in fact, as Harley well knew, such statements were false.

In violation of Title 18, United States Code, Section 152(3).

<u>COUNT TWENTY</u>

**(FALSE STATEMENTS)**

**THE GRAND JURY FURTHER CHARGES:**

32.   The allegations contained in paragraphs 1 through 22 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

33.   On or about May 29, 2012, in the Middle District of Pennsylvania, the defendant,

**RICHARD J. HARLEY,**

-17-

knowingly and fraudulently made a material false declaration, certificate, verification, and statement under penalty of perjury, as permitted under Section 1746 of Title 28, in or in relation to a case under Title 11, to wit:  <u>In Re: Richard Harley</u>, 5:12-bk-03201-RNO, by submitting a list of creditors which omitted Victim #1, the SEC, and the United States when, in truth and in fact, as Harley well knew, Victim #1, the SEC, and the United States were creditors.

     In violation of Title 18, United States Code, Section 152(3).

### COUNT TWENTY-ONE

### (FALSE STATEMENTS)

**THE GRAND JURY FURTHER CHARGES:**

     34.  The allegations contained in paragraphs 1 through 22 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

     35.  On or about May 29, 2012, in the Middle District of Pennsylvania, the defendant,

### RICHARD J. HARLEY,

knowingly and fraudulently made a material false declaration, certificate, verification, and statement under penalty of perjury, as permitted under Section 1746 of Title 28, in or in

relation to a case under Title 11, to wit:   <u>In Re: Richard</u>

<u>Harley</u>, 5:12-bk-03201-RNO, by submitting a statement of financial

affairs which falsely stated that Harley had no businesses in

which he was an officer, director, partner, or managing executive

of a corporation, partner in a partnership, sole proprietor, or

was self-employed in a trade, profession, or other activity,

either full or part-time, within six years immediately preceding

the commencement of the bankruptcy filing, when, in truth and in

fact, as Harley well knew, he was the Chief Executive Officer of

RJH during that time period.

    In violation of Title 18, United States Code, Section
152(3).

## COUNT TWENTY-TWO

### (FALSE STATEMENTS)

**THE GRAND JURY FURTHER CHARGES:**

    36.   The allegations contained in paragraphs 1 through 22 of

this Indictment are hereby repeated, realleged, and incorporated

by reference as if fully set forth herein.

    37.   On or about May 29, 2012, in the Middle District of

Pennsylvania, the defendant,

**RICHARD J. HARLEY,**

-19-

knowingly and fraudulently made a material false declaration, certificate, verification, and statement under penalty of perjury, as permitted under Section 1746 of Title 28, in or in relation to a case under Title 11, to wit:  <u>In Re: Richard Harley</u>, 5:12-bk-03201-RNO, by failing to list all personal property owned by him and his wife, including art objects.

In violation of Title 18, United States Code, Section 152(3).

## COUNT TWENTY-THREE

### (BANK FRAUD)

**THE GRAND JURY FURTHER CHARGES:**

38.   The allegations contained in paragraphs 1 through 22 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

39.   From on or about April 2009, to on or about April 2012, in the Middle District of Pennsylvania and elsewhere, the defendant,

### RICHARD J. HARLEY,

knowingly and willfully devised a scheme and artifice to defraud the Federal Reserve Bank of New York, a financial institution under Title 18, United States Code, Section 20, and to obtain the moneys, funds, credits, assets, securities, or other property

-20-

owned by or under the custody or control of the Federal Reserve Bank of New York by means of materially false and fraudulent pretenses, representations, and promises.

40.  Harley knowingly executed and attempted to execute the above-referenced scheme and artifice to defraud in various ways, including, but not limited to the following:

41.  It was part of the scheme and artifice to defraud that Harley falsely claimed to be the lawful holder of two U.S. Treasury $500 million checks issued by the Federal Reserve Bank of New York and payable to Joseph Teo Hui Kiat, and that Harley was authorized to negotiate those checks.

42.  It was further part of the scheme and artifice to defraud that Harley would provide various lending and financial institutions with copies of the two fraudulent checks, as well as other fraudulent documentation, supposedly generated by the Federal Reserve Bank of New York and others so as to make it appear that the checks were legitimate and that he had authority to negotiate the checks.

43.  It was further part of the scheme and artifice to defraud that Harley attempted to negotiate and deposit the checks and use the funds as collateral for loans from lending and financial institutions.

-21-

44.   It was further part of the scheme and artifice to defraud that Harley demanded a $1 billion cash payment from the Federal Reserve Bank in March and April 2011, pursuant to the two fraudulent U.S. Treasury $500 million supposedly issued by the Federal Reserve Bank of New York.

In violation of Title 18, United States Code, Section 1344.

**A TRUE BILL**

_____
PETER J. SMITH
U.S. ATTORNEY

Aug 30, 2012
DATE

-22-