PJS:BB:nl

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIM. NO. 3:CR-12-00224 |
| | ) | |
| v. | ) | |
| | ) | ( CAPUTO, J.) |
| RICHARD J. HARLEY, | ) | |
| | ) | |
| Defendant. | ) | (ELECTRONICALLY FILED) |

## GOVERNMENT'S OMNIBUS RESPONSE TO
## DEFENDANT'S PRE-TRIAL MOTIONS

AND NOW, the United States of America, by Bruce Brandler,

Assistant U.S. Attorney for the Middle District of Pennsylvania, hereby

responds to the defendant's pre-trial motions and states as follows:

## I. INTRODUCTION.

On August 30, 2012, the defendant, Richard J. Harley ("Harley"),

was indicted by the federal grand jury and charged in a twenty-three

count Indictment.  Counts one through fifteen charge Harley with wire

fraud, in violation of 18 U.S.C. § 1343.  Counts 16 and 17 charge Harley

with bankruptcy fraud, in violation of 18 U.S.C. § 157(1).  Counts 18

through 22 charge Harley with making false statements in bankruptcy

filings, in violation of 18 U.S.C. 152(3).  Count twenty-three charges

Harley with bank fraud, in violation of 18 U.S.C. § 1344.

The 22-page Indictment alleges that Harley executed three related

schemes to defraud multiple victims of money and property between

1999 and 2012.  The first scheme, described as "the Oil Scheme," relates

to Harley's solicitation of investments and loans based on his claim to

own $1 billion worth of oil in Texas.  Indictment, ¶ 5-12.  The second

scheme, described as "the Treasury Check Scheme," relates to Harley's

claim to owning negotiable bank instruments worth more than $700

billion and his attempt to get financial institutions to lend him money

using the bank instruments as collateral.  Indictment, ¶ 13-17.  The

third scheme, described as "the Bankruptcy Fraud Scheme," relates to

Harley's attempt to defraud his creditors and the bankruptcy court by

making false statements in his three bankruptcy filings between 2010

and 2012.  Indictment, ¶ 18-22.

Harley was arraigned on October 16, 2012, pled not guilty to the

charges, and was released on a $100,000 unsecured bond.  Trial was

scheduled to commence on December 17, 2012.  Harley was represented

by William Russo, Esquire, for purposes of the arraignment only, and Harley was to retain private counsel for future proceedings.

When Harley failed to retain private counsel, this Court appointed the Federal Public Defender's Office to represent Harley on November 27, 2012.  Dkt. No. 23.  The Federal Public Defender's Office was provided with discovery pursuant to Fed. R. Crim. P. Rule 16(a) on December 12 and 31, 2012.

On January 9, 2013, the Federal Public Defender's Office was allowed to withdraw as counsel and Mr. Ruzzo was appointed to represent Harley for the remainder of the proceedings.  Dkt. No. 26. Discovery ensued and Mr. Ruzzo was provided extensive discovery, including <u>Jencks</u> Act materials, on January 30, 2013.  Based on the volume of discovery materials, trial was scheduled for September 16, 2013.  Dkt. No. 30.  Because Mr. Ruzzo was unable to review the extensive discovery materials provided to him by the government, pre-trial motions were to be filed by September 16, 2013, and trial was postponed until December 2, 2013.  Dkt. No. 35.

On September 16, 2013, Harley filed his pretrial motions.  This response is made to those motions.

-3-

## II.  A.  <u>Motion to Dismiss</u>.

Harley requests the Court to dismiss the Indictment for failure to allege certain facts.  Specifically, Harley claims:

1.  The Indictment does not allege whether it was the defendant himself who created these fraudulent documents.

2.  The Indictment does not allege the origin of these fraudulent documents.

3.  The Indictment does not allege that the oil reserve analysis was fraudulent.

4.  The Indictment does not allege how it was determined that the documents were fraudulent and that the defendant did not own any oil reserves in Texas.

Harley's Motion to Dismiss, ¶ 5a-d.

Harley claims that without this information, the Indictment is inadequate as a matter of law.  The government respectfully disagrees.

The Third Circuit has repeatedly made clear that detailed allegations are not required to sustain an Indictment:

> Federal Rule of Criminal Procedure 7(c)(1) requires only that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "[T]he Federal Rules 'were designed to eliminate technicalities in criminal pleadings and are construed to secure simplicity in procedure.' Although detailed allegations may have been required under a common law pleading regime,

they "surely are not contemplated by [the Federal Rules."

United States v. Huet, 665 F.3d 588, 594 (3d Cir. 2012) (citations omitted) (finding an indictment for aiding and abetting a felon in possession of a firearm sufficient).

The Third Circuit has also repeatedly stated that:

> It is well established that "[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits."  We have held that an indictment is facially sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."

> [N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy. Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred.

Huet, 665 F.3d at 595 (emphasis added).  See also United States v. Elonis, 2013 WL 52731189 (3d Cir. 2013) (finding an indictment for transmitting a threatening communication in interstate commerce sufficient).

The government submits that the Indictment in this case more than meets the test set forth in <u>Huet</u> and <u>Elonis</u>.  Each count of the Indictment tracks the applicable statutory language, identifies the applicable statute, contains all the elements of the offense, and specifies the time period of the violation.  Rather than a bare bones indictment which merely tracks the statutory language, the Indictment goes into great detail as to how Harley is alleged to have violated each of the statutes.  <u>See</u> Indictment, ¶ 1-22.  These allegations were incorporated into all of the counts in the Indictment.  These details, along with the statutory language, more than suffice to inform Harley of the charges he must be prepared to meet at trial.  The information which Harley claims is omitted from the Indictment is evidentiary detail which need not be contained in an Indictment and is not necessary for him to prepare his defense or invoke double jeopardy.

Therefore, the government respectfully requests that the motion to dismiss be denied.

**B.  <u>Motion for a Bill of Particulars</u>.**

Harley requests a bill of particulars with respect to the bank fraud count only.  Specifically, he requests the government to identify the

lending and financial institutions which he provided the fraudulent checks to, or attempted to obtain loans from, and the dates he visited these financial and lending institutions.  Harley's motion should be denied because this information is either not necessary for him to prepare his defense and/or is already contained in the Indictment and/or has been provided to him in the extensive discovery he has already received.

With respect to the information contained in the Indictment, Harley has been informed that in April 2009, he attempted to defraud Merrill Lynch, Pierce Fenner and Smith ("MLPF&S"), by attempting to deposit two $500 million U.S. Treasury checks purportedly issued by the Federal Reserve Bank of New York.  Indictment, ¶ 14.  Harley was also informed that he attempted to defraud LPL Financial in April 2009 by depositing the two $500 million U.S. Treasury checks into an account at LPL.  Indictment, ¶ 15.  Harley was also informed that he attempted to defraud the Federal Reserve Bank of Atlanta and the Federal Reserve Bank of New York in March and April 2011 by demanding payment from those entities based on the two $500 million U.S. Treasury checks.  Indictment, ¶ 16.  Finally, Harley was informed that

in March 2012, he attempted to defraud State Street Alternative

Investment Solutions by depositing the two $500 million checks into an

account at State Street.  Indictment, ¶ 17.

With respect to Count 23, the bank fraud count, which is the

subject of the motion for a bill of particulars, the victim is identified as

the Federal Reserve Bank of New York, the purported issuer of the two

$500 million checks.  Indictment, ¶ 39.  The entities referred to in

paragraphs 42 and 43 of the Indictment which Harley presented with

the two fraudulent $500 million checks for deposit include MLPF&S,

LPL, and State Street, as those allegations were incorporated by

reference in Count 23.  Indictment, ¶ 38.

The government notes that the discovery materials provided to the

defense reveals other lending and financial institutions where Harley

attempted to negotiate these fraudulent checks.  However, it is not the

function of the bill of particulars to provide the defendant with the

fruits of the government's investigation or wholesale discovery of the

government's evidence.  United States v. Shabazz, 2012 WL 5334480 *2

(M.D. Pa. 2012) (Caputo, J.).  "Rather, it is intended to give the

defendant only that minimum amount of information necessary to

permit the defendant to conduct his own investigation." United States
v. Salko, 2008 WL 4006747 *10 (M.D. Pa. 2008) (Caputo, J.), quoting
United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985).
"Additionally, the court may consider not only the indictment, but also
all the information that has been made available to the defendant."
Shabazz, 2012 WL 5334480 *2.  "There is less need for a bill of
particulars in cases where the government provides substantial
discovery."  Id., citing United States v. Urban, 404 F.3d 754, 772 (3d
Cir. 2004).

        In this case, just as in Shabazz and Salko, because the
information requested has already been provided to the defendant in
the Indictment and in discovery, there is no need for a bill of
particulars.  See also United States v. Sampson, 2012 WL 214707 *3
(M.D. Pa. 2012) (denying motion for a bill of particulars because the
requested information was provided in the indictment and in discovery).
The government, therefore, requests that the motion for a bill of
particulars be denied.

C. <u>Motion to Suppress</u>.

    1.   <u>Harley's Motion Fails to Allege Facts or Cite Law That Would Justify Suppression of Evidence</u>.

Harley seeks to suppress the physical evidence seized at a search of his residence on August 29, 2012.  He also seeks to suppress the statement he gave law enforcement officials during the execution of the search as fruit of the supposed illegal search.  The sole basis for this motion is the claim that the agents executing the search warrant did not present him with a copy of the signed and dated search warrant at the time of the search.  Harley's argument fails factually and legally and should be denied.

As a factual matter, upon entering the premises, S.A. Browning presented Harley with a copy of the signed and dated search warrant.[1]  Although the agent may not have left Harley with a copy of the signed and dated search warrant and left him with an unsigned and undated copy of the warrant, the fact remains that Harley was well aware that a judicial officer had authorized the search of his residence.

---

[1]   Attached as exhibit 1 is a copy of the signed and dated search warrant shown to Harley at the outset of the search.  Attached as exhibit 2 is a copy of S.A. Browning's 302 indicating he showed Harley a copy of the warrant at the outset of the search.

As a legal matter, Harley's argument fails because there is no requirement under the Constitution or case law for a law enforcement officer to show a signed copy of a search warrant to the resident of the place being searched prior to executing the warrant or leaving a signed copy of the warrant with the resident at the conclusion of the search. United States v. Askew, 2010 WL 457535 *10 (W.D. Pa. 2010).   Indeed, there is no requirement under the Constitution for a judicial officer to sign a warrant; all that is required is that the judicial officer <u>issue</u> a warrant upon probable case based on oath or affirmation.  <u>Id.</u> at *11. <u>See also</u> United States v. Jackson, 617 F. Supp. 2d 316, 320 (M.D. Pa. 2009) ("Provided that a search warrant is applied for in person, the text of neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 requires the issuing authority to sign the warrant.").  Nor is it required for the law enforcement officer to leave a copy of the signed warrant at the place being searched in order to pass constitutional muster.  <u>Id.</u>  At most, such an omission would be a technical violation of Rule 41, not a violation of the Fourth Amendment, and would not justify suppression of evidence absent a demonstration of prejudice or bad-faith.  United States v. Lipford, 203 F.3d 259, 270 (4th

Cir. 2000) ("Presuming that [defendant] is correct that some copies of the warrant were signed but that his was not, this was, at most, a technical violation of Federal Rule of Criminal Procedure 41(d), and not a violation of the Fourth Amendment.").

The cases cited by Harley to support his motion are inapposite because they refer to situations where the search warrant was <u>never</u> signed prior to the execution of the search.  <u>See</u> United States v. Evans, 469 F. Supp. 2d 893 (D. Mont. 2007); Jackson, 617 F. Supp. 2d at 319. As acknowledged by the defense, even in these cases, the lack of a signature on the warrant is not necessarily fatal if there is other sufficient indicia that the warrant was properly issued.  Jackson, 617 F. Supp. 2d at 320-321.  In this case, the fact that S.A. Browning showed Harley a signed and dated copy of the warrant at the outset of the search was more than sufficient indicia that the warrant was properly issued.

In cases where a signed and dated warrant was obtained prior to the search, but not presented to the defendant at the time of the search, the courts have unanimously held that suppression of the evidence is not warranted.  <u>Askew</u>, <u>supra</u>; Lipford, 203 F.3d at 269-270, citing

United States v. Marx, 635 F.2d 436, 441 (5th Cir. 1981) ("Violations of
Rule 41(d) are essentially ministerial in nature and a motion to
suppress should be granted only when the defendant demonstrates
legal prejudice or that non-compliance with the rule was intentional or
in bad-faith."); United States v. Okeayainneh, 2011 WL 2457395 *7 (D.
Minn. 2001) (same); Housley v. City of Edina, 2007 WL 42990 *4 (D.
Minn. 2007) (same).

In the case sub judice, the facts are even stronger than in the
cases cited above because here the defendant was shown a copy of the
signed and dated warrant at the outset of the search.  Whether or not a
copy of the signed and dated warrant was left behind is inconsequential
and cannot justify suppression of any evidence.

2.  Good Faith.

Assuming arguendo that the failure to leave Harley a copy of the
signed and dated warrant was a violation of Fed. R. Crim. P. Rule
41(f)(1)(C), the "good faith" exception to the Fourth Amendment
exclusionary rule would apply.  United States v. Leon, 468 U.S. 897
(1984).

"To determine whether to apply the "good faith" exception, the court must ask 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" Jackson, 617 F. Supp. 2d at 322, quoting United States v. $92,422.57, 307 F.3d 137, 145 (3d Cir. 2002). "The fact that a search was conducted pursuant to a warrant typically suffices to prove that an officer conducted a search in good-faith and justifies application of the good-faith exception." Jackson, 617 F. Supp. 21 at 322. "There are, however, four situations in which an officer's reliance on a warrant is not reasonable:

> (1)    When the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2)    When the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3)    When the warrant was based on an affidavit so lacking in probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4)    When the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized."

Id.

None of the exceptions apply here.  Furthermore, as held in <u>Jackson</u>, the good-faith exception insulated the search pursuant to an unsigned warrant.  <u>Id.</u> at 324.  Here, by contrast, S.A. Browning relied on a signed and dated warrant, showed it to the defendant at the outset of the search, but allegedly failed to leave it with the defendant after executing the search.  The government, therefore, submits that the "good-faith" exception applies to this case.

    3.  <u>**Need For a Hearing**</u>.

Because there is a factual issue regarding the issuance and execution of the search warrant, the government requests the Court to schedule a suppression hearing to address this motion.

## III.  <u>CONCLUSION</u>.

WHEREFORE, for the reasons stated above, the motions to dismiss and for a bill of particulars should be denied.  The motion to suppress should be held in abeyance pending a hearing.

Respectfully submitted,

PETER J. SMITH
United States Attorney


 s/ Bruce Brandler _____
Bruce Brandler
Assistant U.S. Attorney
Attorney I.D. No. PA62052
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, Pennsylvania  17108-1754
(717) 221-4482
(717) 221-4583 (Facsimile)
bruce.brandler@usdoj.gov (Email)

Date:  October 3, 2013


## CERTIFICATION OF LENGTH OF BRIEF

It is hereby certified that government's sentencing memorandum

contains 3,090 words, as calculated by the word processing software

used to create it.


  s/ Bruce Brandler
BRUCE BRANDLER
Assistant U.S. Attorney

-16-

PJS:BB:nl

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIM. NO. 3:CR-12-00224 |
| | ) | |
| v. | ) | |
| | ) | (CAPUTO, J.) |
| RICHARD J. HARLEY, | ) | |
| | ) | |
| Defendant. | ) | (ELECTRONICALLY FILED) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on October 3, 2013, she served a copy of the attached:

### GOVERNMENT'S OMNIBUS RESPONSE TO
### DEFENDANT'S PRE-TRIAL MOTIONS

by electronic filing to the person hereinafter named:

William Ruzzo, Esquire
at billruzzo@gmail.com

s/ Naomi Losch
Naomi Losch
Legal Assistant