PJS:BB:nl

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIM. NO. 3:CR-12-00224 |
| | ) | |
| v. | ) | |
| | ) | ( CAPUTO, J.) |
| RICHARD J. HARLEY, | ) | |
| | ) | |
| Defendant. | ) | (ELECTRONICALLY FILED) |

### GOVERNMENT'S RESPONSE TO
### DEFENDANT'S MOTION IN LIMINE

AND NOW, the United States of America, by Assistant U.S.

Attorney Bruce Brandler, hereby responds to the defendant's motion in

limine and respectfully submits that it should be denied.[1]

## I. INTRODUCTION.

The defendant, Richard J. Harley ("Harley"), was indicted on

August 30, 2012 in a 23-count indictment charging wire fraud,

bankruptcy fraud, false statements in connection with bankruptcy

filings, and bank fraud.  Dkt. No. 1.  The indictment listed three inter-

related schemes to defraud that Harley attempted to execute and which

formed the basis for the charges.

---

[1]  The defendant characterizes his motion as a "motion for limine."
The government will refer to it as a "motion in limine."

## A. The Oil Scheme.

The first scheme was listed as "the oil scheme."  Dkt. No. 1, p. 2, ¶ 5-12.  In sum, Harley is alleged to have defrauded individuals and financial institutions by claiming that his company, RJH and Company ("RJH"), owned over $1 billion in oil located in Texas.  Between 1999 and 2012, the indictment alleges that Harley repeatedly solicited loans and investments from individuals and financial institutions based on false claims of RJH owning oil in Texas.  Dkt. No. 1, ¶ 5-9.  The indictment further alleges that Harley obtained substantial funds as a result of this scheme.[2]  Indictment, ¶ 12.

The largest victim of Harley's fraud was an individual named Marshall Silverstein ("Silverstein") who lost approximately $259,500 between 2006 and 2009.  When Silverstein realized he had been defrauded, he retained an attorney, Kevin Fogerty ("Fogerty"), who sued Harley in the Court of Common Pleas of Lehigh County, Pennsylvania, on November 9, 2009.  Silverstein v. RJH, Richard J. Harley and Jacqueline Kube Harley, No. 2009-C-5910.  The civil

---

[2] The evidence at trial will show that Harley obtained approximately $323,800 from nine different victims during this time period based in whole and in part on these false representations.

lawsuit, which charged fraud, among other things, resulted in a judgment against RJH, Harley and Kube for $1,140,000 on August 9, 2011.

While that civil lawsuit was pending, Harley filed three bankruptcy petitions in the U.S. Bankruptcy Court for the Middle District of Pennsylvania, which the indictment alleges were attempts by Harley to frustrate Silverstein's attempts to obtain the judgment and collect on the judgment.  Dkt. No. 1, ¶ 10, 18-22.

### B. The Bankruptcy Fraud Scheme.

As alleged in the indictment, Harley attempted to defraud Silverstein and his other creditors by filing false and fraudulent bankruptcy petitions in the bankruptcy court.  In the first two bankruptcy petitions Harley filed on behalf of himself and RJH (the 2010 and 2011 petitions), Harley listed Silverstein as a creditor in the amount of $2 million and attempted to discharge that debt.  Dkt. No. 1, ¶ 20-21, Counts 16-17.  The evidence will show that Harley filed the 2010 and 2011 petitions on the eve of various hearings scheduled in the civil lawsuit which substantially delayed the proceedings because of the automatic stay provisions in the bankruptcy code.

The third bankruptcy petition, filed on May 29, 2012 (the 2012 petition), was a personal bankruptcy where Harley attempted to discharge a debt of $37,793.61 owed to Northslope III Owners' Association for delinquent homeowners' maintenance fees for his residence and attorney's fees owed to Northslope's attorney. Northslope, acting through its attorney, Kevin Hardy ("Hardy"), had filed civil suits against Harley in the Court of Common Pleas of Monroe County in 2006 and 2007. <u>Northslope III Owners Assoc. v. Richard Harley</u>, No. 7180-CV-2006 and No. 6449-CV-2007. Harley was jailed for contempt of court on May 23, 2012 for willfully failing to comply with various orders of the court for payment of monetary awards and sanctions, as well as various discovery violations.

The indictment alleges that Harley filed the 2012 personal bankruptcy petition on May 29, 2012, six days after he was jailed, and made numerous false statements, including failing to list Silverstein as a creditor and failing to list the United States and the SEC as a creditor. Dkt. No. 1, ¶ 22, count 20. As a result of the May 29, 2012 personal bankruptcy filing, Harley was released from the Monroe County jail on June 8, 2012. The judge in the Monroe County case

ruled that Harley's release from jail didn't affect the finding of contempt and further stated that Northslope could file for reinstitution of the contempt sanctions once the bankruptcy case ended.  <u>Northslope v. Harley</u>, Order dated June 8, 2012.

## C.  <u>The Treasury Check Scheme</u>.

The third scheme to defraud alleged in the indictment is the treasury check scheme.  Dkt. No. 1, ¶ 13-17.  In the treasury check scheme, it is alleged that Harley falsely claimed that RJH owned "valuable bank instruments totaling more than $700 billion and solicited financial and other lending institutions to negotiate and deposit those funds, manage those funds, and lend RJH money against those funds."  Dkt. No. 1, ¶ 13.  Part of the scheme was Harley's false claim to own two $500 million U.S. Treasury checks purportedly issued by the Federal Reserve Bank of New York.  Dkt. No. 1, ¶ 14-17.  Count 23 of the indictment, which charges bank fraud, and counts 12-15, which charge wire fraud, relate to the Treasury check scheme.

## D.  <u>Harley's Prior Convictions and SEC Judgment in the Ozone Therapy Case</u>.

In 1996, Harley, his wife, Jacqueline Kube, and his company, Lazare Industries, were indicted for mail fraud, wire fraud, introduction

of unapproved new drugs in interstate commerce, and adulteration of a device after shipment in interstate commerce.  U.S.A. v. Harley, et al., 3:96-CR-286.  The indictment related to "crimes arising out of a scheme to defraud patients and investors by promoting an unsafe and untested therapy for AIDS/HIV."  United States v. Harley, et al., 39 Fed. Appx. 789 (3d Cir. 2002).

After protracted legal proceedings in the district court, Harley, Kube, and Lazare Industries were convicted of multiple counts of the superseding indictment on May 12, 2000 after a jury trial.  U.S.A. v. Harley, et al., 3:96-CR-286, Dkt. Nos. 415, 416, and 417.  Harley was sentenced on March 30, 2001 and ordered to serve five years in prison, be on supervised release for two years, pay restitution in the amount of $168,152, as well as a $650 special assessment.  Id. at Dkt. No. 558. The judgment and commitment order was affirmed by the Third Circuit Court of Appeals on July 16, 2002, and the U.S. Supreme Court denied Harley's petition for a writ of certiorari.  Id. at Dkt. Nos. 623 and 629, 630.

In addition to the criminal conviction, the U.S. Securities and Exchange Commission ("SEC") sued Harley, Kube, and Lazare

Industries in connection with Harley's ozone therapy fraud in district court in 2006.  <u>SEC v. Harley, et al.</u>, 3:96-CV-705.  The SEC alleged that Harley engaged in a scheme to defraud more than seventy investors by making fraudulent representations in connection with the offer and sale of $1.4 million of unregistered stock of Lazare Industries. The district court entered the final judgment and order against Harley, Kube, and Lazare on January 4, 2008 and directed that the defendants jointly and severally pay $975,911 in disgorgement of profits and interest.  The Court further ordered Harley to pay a penalty of $500,000.  <u>Id.</u> at Dkt. No. 121.  The judgment of the district court was affirmed by the Third Circuit Court of Appeals on September 30, 2008. SEC v. Harley, et al., 294 Fed. Appx. 711 (3d Cir. 2008).

As stated in the indictment, Harley's personal bankruptcy petition filed in 2012 not only failed to list Silverstein as a creditor, but also failed to list the United States or the SEC as a creditor.  Dkt. No. 1, count 20.

II. <u>ARGUMENT</u>.

**THE MOTION IN LIMINE SHOULD BE DENIED BECAUSE THE PRIOR BAD ACTS WHICH THE UNITED STATES SEEKS TO INTRODUCE AS EVIDENCE IS "INTRINSIC" EVIDENCE NOT SUBJECT TO RULE 404(b) ANALYSIS.**

The Third Circuit Court of Appeals has made clear that "intrinsic" evidence of the charged offenses is admissible at trial and not subject to Rule 404(b).  <u>United States v. Green, 617 F.3d 233 (3d Cir. 2010)</u>.  In <u>Green</u>, the Court stated that "intrinsic" evidence consists of two categories of evidence:

> First, evidence is intrinsic if it directly proves the charged offense.  This gives effect to Rule 404(b)'s applicability only to evidence of "<u>other</u> crimes, wrongs, or acts." Fed. R. Evid. 404(b).  If uncharged misconduct directly proves the charged offense, it is not evidence of some "other" crime.
>
> Second, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime."

<u>Green, 617 F.3d at 249</u>, citations omitted, emphasis in original.

Harley seeks to preclude the government from admitting "intrinsic" evidence of the crimes charged in the indictment.  The motion should be denied.

A. **Silverstein v. Harley, 2009-C-5910, Court of Common Pleas of Lehigh County**.

Counts one through five of the indictment charge Harley with wire fraud in connection with the $259,500 Harley obtained from Silverstein in connection with the oil scheme.  Counts 16 and 17 of the indictment charge Harley with bankruptcy fraud in connection with RJH's 2010 and 2011 bankruptcy petitions because Harley attempted to frustrate and discharge his debts to Silverstein through those bankruptcy petitions.  The facts underlying the civil judgment Silverstein obtained against Harley in the Court of Common Pleas of Lehigh County are the same facts underlying counts 1-5 and 16-17 of the indictment.  To preclude the government from proving those facts would preclude the government from proving the intrinsic evidence of the fraud charged in those counts.

Moreover, the judgment Silverstein obtained against Harley in the Court of Common Pleas of Lehigh County is intrinsic evidence of the fraud alleged in count 20 of the indictment.  Count 20 alleges that Harley made a false statement in his 2012 bankruptcy petition because, inter alia, he failed to list Silverstein as a creditor.  Silverstein obtained the judgment against Harley in August 2011, and precluding the

-9-

government from introducing evidence of the judgment would prevent the government from proving the crime charged in count 20. The Court should deny Harley's motion as it relates to the facts underlying the civil judgment, as well as the civil judgment itself, because that evidence directly proves the charged offenses and is therefore "intrinsic" evidence.

## B.   Harley's Prior Conviction Under 3:CR-96-286 and the SEC Judgment Under 3:96-CV-705.

The government does not intend to introduce evidence on its direct case that Harley was convicted of defrauding patients and investors in connection with his ozone therapy scheme.[3]  The government does, however, intend to introduce evidence that the United States obtained a judgment against Harley for $168,152 on March 30, 2001 because that evidence is "intrinsic" evidence of the crime charged in count 20.  The government further intends on explaining the judgment as arising out of a separate litigation from the one presently before the Court and

---

[3]  The government has instructed all of its witnesses not to mention the criminal conviction during their direct testimony.  If Harley testifies on his own behalf, the government will seek to impeach him with that conviction pursuant to Fed. R. Evid. Rule 609.

jury.  Such a procedure will eliminate any unfair prejudice to Harley and allow the government to prove the facts underlying count 20.

Similarly, the government does not intend to introduce evidence on its direct case that the SEC obtained a judgment against Harley for defrauding investors and patients in connection with the ozone therapy scheme.  The government does, however, intend to introduce the fact that the SEC obtained a judgment against Harley on January 4, 2008 in "separate litigation" which held Harley liable for paying the SEC $1,475,911 and which he failed to list on his 2012 personal bankruptcy petition.  Such evidence is intrinsic to the crime charged in count 20 and there is no basis to preclude it.

The government will also introduce evidence of its efforts to collect its judgment and the SEC and Silverstein's efforts to collect its judgments to counter any suggestion that Harley simply forgot to list these creditors on his 2012 petition.

## C. Northslope v. Harley, 7180-CV-2006, 6449-CV-2007, Court of Common Pleas Monroe County.

The debts Harley owed to Northslope and Northslope's attorney, Hardy, were listed by Harley in his 2012 personal bankruptcy petition. Dkt No. 1, ¶ 22.  The government will introduce the bankruptcy petition

into evidence under counts 20, 21, and 22 and thus, those debts are intrinsic evidence of the offenses charged in those counts.  In addition, Hardy will testify that Harley filed his personal bankruptcy petition on May 29, 2012, six days after being jailed for contempt in the Northslope litigation.  He will further testify that Harley was released on June 8, 2012 as a result of the bankruptcy filing.  This evidence, while not intrinsic to counts in the indictment, is admissible pursuant to Rule 404(b).

As explained in <u>Green</u>, evidence is admissible under Rule 404(b) if it is offered for a proper evidentiary purpose; is relevant; satisfies Rule 403; and is accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it.  Green, 617 F.3d at 249.  The evidence of Harley's contempt and jailing in State court has at least three proper purposes.  First, it explains Harley's motive in filing the fraudulent 2012 bankruptcy petition.  Part of that motive was to get out of jail and he succeeded in accomplishing that objective.  Second, it shows that Harley intended to use the bankruptcy court as a vehicle to frustrate Northslope's efforts to collect its judgments against him.  This refutes Harley's claim that his 2010 and 2011 bankruptcy

petitions were filed in good faith, as Harley used the same modus operandi to frustrate Silverstein's judgments.  Finally, this evidence is necessary to supply necessary background information which completes the story of the crime surrounding the 2012 bankruptcy petition.  It explains why Harley filed the petition in the first place.  Rule 404(b) permits use of this evidence for any and all of the above three purposes. See Fed. R. Evid. Rule 404(b)(2) (proving motive, intent, plan, absence of mistake or lack of accident all permissible purposes) and Green, 617 F.3d at 250 (" . . . one proper purpose under Rule 404(b) is supplying helpful background information to the finder of fact.").

Second, the evidence is relevant because it tends to show that Harley knowingly and willfully filed the 2012 bankruptcy petition which is alleged to be fraudulent.  It also shows his lack of good-faith in the 2010 and 2011 petitions because he used the same method to frustrate Silverstein.

Third, the probative value of this evidence is not outweighed by the danger of unfair prejudice under Rule 403 analysis.  The evidence is highly probative because it explains the 2012 bankruptcy filing which is

alleged to be fraudulent.  The danger of unfair prejudice is slight

considering that the contempt citation and jailing were in connection

with civil litigation unrelated to the schemes listed in the indictment.

Furthermore, as held in <u>Green</u>, any risk of unfair prejudice is

minimized by a limiting instruction, if requested.  <u>Green,</u> 617 F.3d at

252.  Thus, the government submits this evidence is admissible under

Rule 404(b).[4]


## III.  <u>CONCLUSION</u>.

WHEREFORE, for the reasons stated above, the motion in

limine should be denied.

Respectfully submitted,

PETER J. SMITH
United States Attorney


 s/ Bruce Brandler_____
Bruce Brandler
Assistant U.S. Attorney
Attorney I.D. No. PA62052

---

[4]   The government submits that the other evidence referred to in
this memorandum is also admissible under Rule 404(b), even if not
deemed to be intrinsic evidence.

228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, Pennsylvania  17108-1754
(717) 221-4482
(717) 221-4583 (Facsimile)
bruce.brandler@usdoj.gov (Email)

Date:  April 21, 2014

PJS:BB:nl

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIM. NO. 3:CR-12-00224 |
| | ) | |
| v. | ) | |
| | ) | (CAPUTO, J.) |
| RICHARD J. HARLEY, | ) | |
| | ) | |
| Defendant. | ) | (ELECTRONICALLY FILED) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on April 21, 2014, she served a copy of the attached:

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S MOTION IN LIMINE

by electronic filing to the person hereinafter named:

William Ruzzo, Esquire
at billruzzo@gmail.com


s/ Naomi Losch
Naomi Losch
Legal Assistant