Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)
**(Cite as: 2006 WL 1147250 (E.D.Pa.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Stacey L. ROBINSON, Plaintiff
v.
CITY OF PHILADELPHIA, Defendant.

Civil Action No. 04-3948.
April 26, 2006.

Brian R. Mildenberg, Sherri J. Braunstein, Mildenberg & Stalbaum PC, Philadelphia, PA, for Plaintiff.

Stephen C. Miller, City of Philadelphia, Law Department, Philadelphia, PA, for Defendant.

### MEMORANDUM OPINION AND ORDER
RUFE, J.

*1 Presently before the Court is the Motion of Defendant City of Philadelphia (the "City") to Quash Plaintiff's Notice of Deposition to Honorable John Street. The Motion arises from Plaintiff's attempt to depose the Mayor of Philadelphia in connection with her claim that the City took certain illegal actions against her in retaliation for her dispute with a business owner at the Philadelphia International Airport and for her cooperation with a federal criminal investigation of corruption within city government.[FN1] For the reasons that follow, the Court grants the Motion.

> FN1. As Robinson points out, the instant Motion is incorrectly titled. Because Mayor Street is an agent of the City, the named Defendant in this action, the Motion instead should be titled as seeking a protective order pursuant to Federal Rule of Civil Procedure 26(c). The error is one of form rather than function, and, therefore, does not affect the Court's analysis of the Motion's substance.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Stacey Robinson ("Robinson") formerly worked at the Philadelphia International Airport (the "Airport"), which is owned by the City. In her role as Acting Airport Properties Manager, a temporary position, Robinson was responsible for ensuring that restaurants and concession stands at the Airport met various safety regulations. In spring of 2003, she became aware that the security roll-down grille at a restaurant owned by Eric J. Blatstein ("Blatstein") did not comply with the Airport's design specifications. Upon being informed of the grille's noncompliance, Blatstein sought permission to leave the improper grille in place. Robinson denied Blatstein's request and insisted that the grille be changed. She relayed her decision to deny Blatstein's request to her supervisors, Director of Aviation Charles Isdell ("Isdell"), Deputy Director of Aviation for Property Management and Business Development James Tyrell ("Tyrell"), and Airport Chief of Staff Jeff Shull ("Shull").

Beginning in fall of 2003, Robinson alleges she fell out of favor with Tyrell and Shull. In November 2003, she overheard one colleague tell another that "Jeff [Shull] said to get [Robinson] out of her position."[FN2]

> FN2. Compl. ¶ 22.

On January 28, 2004, two Federal Bureau of Investigation ("FBI") agents investigating corruption within city government informed Robinson that wiretaps had recorded Airport personnel discussing the need to "get her out of the way" because she "won't play."[FN3] The FBI agents also warned her to "be

Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)
**(Cite as: 2006 WL 1147250 (E.D.Pa.))**

careful" because "someone's trying to get rid of you." [FN4]

> [FN3]. Compl. ¶ 25.
>
> [FN4]. *Id.*

In subsequent interviews with the FBI, Robinson learned that Blatstein had enlisted Ron White ("White"), a lawyer who did occasional contract work at the Airport and is now deceased, to deal with Robinson. According to White's wife, Dr. Aruby Odom-White, White was a political fundraiser for Mayor Street and the two had been friends for more than twenty years after meeting in law school. [FN5] However, beyond recalling that Mayor Street would call their home to talk with White, Dr. Odom-White did not know the extent of her husband's relationship with Mayor Street. [FN6] Blatstein knew about White's connection to Mayor Street, and Blatstein had contributed up to $36,000 to Mayor Street's political campaigns through White. [FN7] According to the FBI, Blatstein told White about Robinson's refusal to allow him to leave the improper roll-down grille in place and said, "Stacey's out of control." [FN8] Blatstein also communicated that Robinson's supervisors at the Airport could not alter her decision regarding the grille. White responded, "Don't worry about it, I'll take care of it." [FN9] Robinson learned from the FBI that White subsequently called the Director of the Airport and said to get rid of her because "she's a problem." [FN10]

> [FN5]. Dr. Aruby Odom-White Dep. 37:12-19 (date not provided).
>
> [FN6]. *Id.* 41: 12-16.
>
> [FN7]. Eric Blatstein Re-Dep. 61: 12-20, Mar. 15, 2006.
>
> [FN8]. Compl. ¶ 30.
>
> [FN9]. *Id.*
>
> [FN10]. Stacey Robinson Dep. 253:7-11, Jan. 12, 2006.

**\*2** Robinson alleges that as a result of her decision regarding the grille at Blatstein's restaurant and her cooperation with the FBI, the City retaliated against her by excluding her from consideration for a permanent appointment to the position of Airport Properties Manager, excluding her from meetings, and not assigning her work. On August 18, 2004, she brought this lawsuit asserting claims under 42 U.S.C. § 1983, wrongful discharge in violation of Pennsylvania public policy, and violation of the Pennsylvania whistleblower law.

On March 15, 2006, Robinson served a notice to depose Mayor Street, and on March 17, 2006, the City filed the Motion now under consideration.

II. DISCUSSION

The City seeks to prevent Robinson from deposing Mayor Street for two reasons: (1) Robinson has not sought leave to take an additional deposition beyond the ten permitted by the Federal Rules; and (2) the request to depose Mayor Street is unreasonable, unnecessary, and burdensome.

Federal Rule of Civil Procedure 30(a)(2) provides that "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in rule 26(b)(2), if ... a proposed deposition would result in more than ten depositions being taken under this rule." [FN11] The Court has previously granted Robinson leave to take two additional depositions over and above the procedural limit, [FN12] and Robinson has presently taken only eleven depositions. Therefore, the City's first argument is unavailing because Robinson has one deposition remaining.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)
**(Cite as: 2006 WL 1147250 (E.D.Pa.))**

FN11. Fed.R.Civ.P. 30(a)(2).

FN12. Order of Jan. 3, 2006 ¶ 2 [Doc. # 22].

The City's second reason, however, is more compelling. Courts have recognized that "high ranking government officials are generally entitled to limited immunity from being deposed" about certain matters.[FN13] "A party seeking the deposition of a high ranking government official must demonstrate that his testimony is likely to lead to the discovery of admissible evidence, is essential to that party's case and that this evidence is not available through any alternate source or less burdensome means."[FN14]

> FN13. *Hankins v. City of Philadelphia,* Civ. No. 95-1449, 1996 WL 524334, at *1 (E.D.Pa. Sept. 12, 1996) (extending such immunity to the former Mayor of Philadelphia). *See, e.g., United States v. Wal-Mart Stores,* Civ. No. PJM-01-CV-152, 2002 WL 562301, at *2 (D.Md. Mar. 29, 2002) (recognizing a limited immunity from deposition for both current and former high ranking officials); *Warzon v. Drew,* 155 F.R.D. 183, 185 (E.D.Wisc.1994) ("In general, high ranking government officials enjoy limited immunity from being deposed in matters about which they have no personal knowledge"), *aff'd,* 60 F.3d 1234 (7th Cir.1995).

> FN14. *Hankins,* 1996 WL 524334, at *1. *Accord Warzon,* 155 F.R . D. at 185.

The first requirement-that "testimony is *likely* to lead to the discovery of admissible evidence"-requires something greater than the normal Rule 26 relevancy standard.[FN15] "Mere knowledge or awareness of information that may be helpful if discovered is insufficient."[FN16] In *Hankins v. City of Philadelphia,* another court in this District denied plaintiffs' request to depose then-Mayor Edward G. Rendell because they had not "demonstrate[d] the type of need required to divert the Mayor from his official duties."[FN17] In *Hankins,* plaintiffs sought to depose the mayor about the City's approval of changes in eligibility requirements for the position of AIDS Program Director. The mayor had participated in the approval process only by virtue of his membership on the City's Administrative Board, which was responsible for ultimate approval of the change in eligibility requirements but had not engaged in any deliberations on the matter. The court held it unreasonable "to infer from the Mayor's *proforma* administrative approval of these changes that he was involved in or had personal knowledge of the deliberations underlying them."[FN18] While *Hankins* is not controlling and is factually distinguishable from the present case-because it deals with the Mayor's involvement in an administrative decision rather than a more personal situation-it highlights the need for a party seeking to depose the Mayor to make an actual showing that the Mayor possesses personal knowledge relevant to the litigation.

> FN15. Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."

> FN16. *Wal-Mart Stores,* 2002 WL 562301, at *2. *Accord Marisol A. v. Giuliani,* Civ. No. 95-10533(RJW), 1998 WL 132810, at *3 (S.D.N .Y. Mar. 23, 1998) (stating the first prong of the standard for deposing high-ranking government officials is "strictly imposed").

> FN17. *Hankins,* 1996 WL 524334, at *2.

> FN18. *Id.*

***3** Here, no evidence directly or inferentially

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)
**(Cite as: 2006 WL 1147250 (E.D.Pa.))**

suggests that Mayor Street has personal knowledge of the Robinson incident or White's involvement in it. Robinson seeks to depose Mayor Street for the following reason:

> [B]ecause Ron White is deceased, the Mayor is now the only person with direct knowledge of Ron White's relationship with the City. The Mayor's testimony with [sic] further make clear why Stacey Robinson's superiors deferred to the direction of Ron White when it came to shunning Stacey Robinson in the workplace. In fact, Plaintiff will attempt to show through the Mayor's testimony, that because of the power and influence the City and Mayor had delegated to Ron White, Stacey Robinson's co-workers and superiors were in fact influenced in their treatment of Stacey Robinson.[FN19]
>
> > [FN19]. Pl.'s Resp. to Def.'s Mot. to Quash at 5.

In other words, Robinson believes that White leveraged his relationship with Mayor Street to coordinate efforts to shun Robinson for her confrontation with Blatstein and cooperation with the FBI. While Robinson's theory is creative, the only established link between Mayor Street and this litigation is his vague personal and professional relationship with White. And although Dr. Odom-White testified that Mayor Street would call White occasionally during the course of their twenty-year friendship, she did not know what they discussed in those calls and did not say that they spoke to each other during the time of the events giving rise to this suit.

Moreover, there is no evidence in the present state of the record to establish that anyone asked White to contact Mayor Street regarding Robinson. There is also no evidence that establishes that Robinson's supervisors at the Airport otherwise reached out to Mayor Street or the Mayor's office regarding Robinson. During the course of its interviews with Robinson, the FBI never once mentioned the Mayor being involved or referenced in any conversation regarding Robinson. Thus, the connection between Mayor Street and White-friendship and political fundraising-is simply too tenuous to conclude that Mayor Street's testimony is likely to lead to admissible evidence in this case.[FN20]

> [FN20]. In a teleconference between counsel for both parties and the Court, counsel for Robinson suggested another reason his client sought to depose Mayor Street. Robinson's counsel said he wanted to ask whether Mayor Street somehow ordered or approved White's alleged effort to shun Robinson. That argument for deposing Mayor Street fails for the same reasons set forth above: there is no evidence suggesting Mayor Street has personal knowledge of this matter.

Robinson attempts to satisfy the first requirement to depose a high-ranking official by emphasizing her position under the second and third requirements. She points out that only Mayor Street can testify to his relationship with White, since White is now deceased. She also claims that his testimony is essential to her case because White needs to be connected to the City to establish her theory that the City orchestrated a campaign of retaliation against her. Combining these propositions, Robinson urges that only Mayor Street can supply the missing piece to complete the picture of the City's involvement in this matter. Perhaps, but the supposedly essential or unique aspects of Mayor Street's testimony cannot overcome the absence of actual likelihood that his testimony will lead to admissible evidence. Robinson's unfounded suspicion about what Mayor Street knows or will say is no substitute for reasonable evidence and inference. To conclude otherwise would allow Robinson, or any civil litigant, to depose any high ranking official based on nothing more than supposition.

**\*4** Furthermore, to the extent Robinson seeks

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)
**(Cite as: 2006 WL 1147250 (E.D.Pa.))**

generally to substantiate White's influence at the Airport, other individuals could testify to that influence. For example, other Airport employees or people within the Mayor's office who work with matters at the Airport, are likely to know White's role at the Airport or be aware of other occasions where White leveraged his ties to Mayor Street to make things happen. Therefore, while only Mayor Street can flesh out the nature of their personal and political relationship, it is not true that only Mayor Street can provide testimony about how White went about leveraging his relationship with the Mayor to help Blatstein deal with Robinson.

In conclusion, consistent with the "public policy concern that high ranking government officers be permitted to perform their official tasks without disruption or diversion," [FN21] the Court grants the City's Motion.

FN21. *Hankins,* 1996 WL 524334, at * 1.

An appropriate Order is attached.

### ORDER

AND NOW, this 26th day of April 2006, upon consideration of Defendants' Motion to Quash Plaintiff's Notice of Deposition to Honorable John Street [Doc. # 36], Plaintiff's Response thereto [Doc. # 41], and Defendant's Reply [Doc. # 44], and after brief argument via teleconference, it is hereby ORDERED that Defendants' Motion is GRANTED.

It is so **ORDERED.**

E.D.Pa.,2006.
Robinson v. City of Philadelphia
Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.