UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

--------------------------------------------------------------X
: JURY TRIAL DEMANDED
UNITED STATES OF AMERICA, :
: No. 3:12-CR-224
Plaintiff, :
: Hon. A. Richard Caputo
v. :
:
RICHARD J. HARLEY, :
:
Defendant. :
:
--------------------------------------------------------------X

FILED
SCRANTON
DEC - 9 2014

PER_____
DEPUTY CLERK

## MEMORANDUM OF LAW IN SUPPORT OF THE FEDERAL RESERVE BANK OF NEW YORK'S MOTION TO QUASH SUBPOENAS SERVED ON B. GERARD DAGES AND JAMES R. HENNESSY

The Federal Reserve Bank of New York (the "New York Fed") submits this memorandum in support of its motion to quash subpoenas served or intended to be served upon two of its current employees, James R. Hennessy and B. Gerard Dages (the "Subpoenaed Individuals").

**The Subpoenas Served on B. Gerard Dages and James R. Hennessy**

On December 3, 2014 the New York Fed accepted subpoenas Defendant Richard Harley caused to be served on a New York Fed employee, B. Gerard Dages ("Dages Subpoena").[1] The Dages Subpoena, attached hereto as Exhibit A to the attached Declaration of Daniel M. Kuhn in Support of the Federal Reserve Bank of New York's Motion to Quash ("Kuhn Decl."). The New York Fed has told defendant that it would accept service on behalf of another employee, James R. Hennessy ("Hennessy Subpoena").[2] The subpoenas compel Mr. Dages and Mr. Hennessy to testify

---

[1] Mr. Dages' name is incorrectly spelled "Deges" in the subpoena. Kuhn Decl., ¶ 2.
[2] On December 24, 2014 the New York Fed advised defense counsel that it would accept service on Mr. Dages and Mr. Hennessy. Kuhn Decl., ¶ 3. Defense counsel filed an ex parte motion for the issuance of both subpoenas, which was entered on December 1. *Id.* On December 3, 2014, the New York Fed accepted service of the Dages Subpoena, but was not served with the Hennessy Subpoena. Kuhn Decl., ¶ 4. Since the Hennessy Subpoena has not been served, Mr. Hennessy is under no

1

at trial on December 11, 2014. The subpoenas also seek the production of documents "concerning Richard J. Harley, Joseph Hui Kiat and Yohannes Riyadi…" relating to two purported $500,000,000.00 U.S. Treasury checks allegedly held by the New York Fed. The subpoenas are identical to another subpoena served on a former New York Fed Employee, Christopher McCurdy.

Certain counts and allegations against Defendant concerning bank fraud involve the alleged validity of two purported United States Treasury checks totaling one billion dollars. Indictment ¶¶ 14-17, 38-44, *U.S. v. Harley*, No. 3:12-CR-224 (M.D.Pa. 2012). There are several documents that relate to the two purported $500 million checks, including a "safe keeping receipt," an "extended safe keeping receipt," and a "statement of readiness." The Subpoenaed Individuals' names appear on the "Statement of Readiness," and Mr. Dages' name appears on an April 2010 document purporting to be from the New York Fed. Mr. Harley apparently contends that the Subpoenaed Individuals can offer testimony to help him establish the validity of the two checks and other documents at issue. Defendant is incorrect – the Subpoenaed Individuals cannot offer any material or favorable testimony for Mr. Harley as they have no personal knowledge of the facts or documents at issue.

**The Documents Likely at Issue**

The following is a summary of the documents that are likely to be the subject of the Subpoenaed Individuals' testimony. In describing these documents and their contents the New York Fed does not mean to imply that the language used in the documents is commonly used or recognized by the New York Fed. In fact, much of the language is nonsensical.

---

subpoena and need not appear. However, since Mr. Hennessy and Mr. Dages are both similarly situated vis-à-vis the subpoenas in that neither will be able to offer material or favorable testimony to Defendant, the New York Fed opposes both the unserved Hennessy Subpoena and the served Dages Subpoena simultaneously and for purposes of this memorandum treats both parties as having been served. However, such treatment in this memorandum does not waive Mr. Hennessy's rights to object to the subpoena as unserved. In fact, since he has not been served with a subpoena, Mr. Hennessy is under no obligation to appear to testify at trial.

Importantly, while the New York Fed produced certain of the documents likely at issue, those documents were originally received from Mr. Harley. Kuhn Decl., ¶ 7. None of the documents likely at issue were found in the New York Fed's records unless they were originally provided to the New York Fed by Defendant. *Id.* Sahil Godiwala, a former employee of the New York Fed, testified at the trial that he exchanged emails and phone calls with Mr. Harley. Mr. Godiwala was an attorney and an Officer in the Enforcement, Litigation, Protection, and Investigation Division (now the Enforcement, Litigation and Investigation Division ("ELI") within the New York Fed's Legal Function. Kuhn Decl., ¶ 8. Attorneys and Investigators in ELI support the New York Fed's efforts to combat frauds and scams in which criminals invoke the name of the Federal Reserve System and banks within the Federal Reserve System to deceive the public. *Id.*, ¶ 9. That often requires interaction with victims and perpetrators of a particular fraud or scam. *Id.* As Mr. Godiwala testified, in April 2011 he interacted with the Defendant concerning the two $500 million checks, and Defendant emailed a number of documents to Mr. Godiwala, including images of the two checks and the "Statement of Readiness." Additional documents were recently provided to the New York Fed by Defendant's counsel, and the New York Fed had not previously seen them and has not produced them in connection with this case. Kuhn Decl., ¶ 10.

One of the documents likely at issue is a "Statement of Readiness." The "Statement of Readiness" is attached hereto as Exhibit B to the Kuhn Decl. The "Statement of Readiness" is dated September 19, 2008. Kuhn Decl., Ex B. Though the document purports to be from "The Federal Reserve Board," perhaps referring to the Board of Governors of the Federal Reserve System, which is located in Washington D.C., it bears the address of the "Federal Reserve Bank," likely referring to the Federal Reserve Bank of New York, which is located at 33 Liberty Street in New York, New York. *Id.* The "Statement of Readiness" is addressed to "Asset Management," and is cc'd to Yohannes Riyadi and Joseph Teo Hui Kiat. *Id.* The "Statement of Readiness" represents that the

Federal Reserve Bank of New York confirms that it is in possession of two U.S. Treasury checks totaling one billion dollars, and that it is "ready willing and able ... to immediately block said instruments in situ in favour on his nominated beneficiary and to record said blocking by way of the issuance of the following SWIFT instrument..." *Id.* The document then provides various "Details of Financial Instrument/s:". *Id.* The Statement of Readiness bears the names and what purports to be the signatures of Mr. Hennessy and Mr. Dages. *Id.*

Mr. Dages's name also appears on another document, dated April 2010 (the "April 2010 document").[3] The April 2010 document is attached to the Kuhn Decl. as Exhibit C.  Mr. Dages and another subpoenaed individual, Christopher McCurdy, purportedly signed a document that appears to be a form document from the "Federal Reserve Board" and the "Federal Reserve Bank," that confirms that a "TRUEWORTH HODINGS, LTD HAS ON ACCOUNT; # Number, ONE TRILLION EURO LOCATED AT HSBC, LONDON," and goes on to make representations about how the funds are "NON LEASED FUNDS" and are "CLEAR CLEAN AND UNENCUMBERED CASH FUNDS AVAILABLE FOR ANY TYPE OF CREDIT LINE." *Id.*

The following facts, which are averred to by both Mr. Dages and Mr. Hennessey in affidavits attached to the Kuhn Decl. as Exhibits D and E ("Hennessy Aff." and "Dages Aff."), demonstrate that neither has any knowledge of the underlying facts at issue in this trial, and particularly the document(s) about which they would be called to testify:

1. Neither Mr. Hennessy nor Mr. Dages signed the "Statement of Readiness" that bears his name.  The two signatures on the document do not resemble the actual signatures of the Subpoenaed Individuals.  Dages Aff. ¶ 10(a), Hennessy Aff. ¶ 11(a).

2. Aside from the "Statement of Readiness" at issue here, the Subpoenaed Individuals have never seen a document called a "Statement of Readiness."  In fact, to the best of

---

[3] The April 2010 document was provided to the New York Fed by Defendant's counsel on December 4, 2014, and was not previously in the New York Fed's possession.  Kuhn Decl., ¶ 12.

their knowledge, the Federal Reserve Bank of New York does not issue "Statements of Readiness." Dages Aff. ¶ 10(b), Hennessy Aff. ¶ 11(b).

3. The Subpoenaed Individuals do not know, and have not had any professional or personal interactions with the individuals named in the "Statement of Readiness," specifically, Mr. Yohannes Riyadi and Mr. Joseph Teo Hui Kiat. Dages Aff. ¶ 10(c), Hennessy Aff. ¶ 11(c). Nor have they had any professional or personal interactions with Mr. Harley, the defendant. Dages Aff. ¶ 10(c), Hennessy Aff. ¶ 11(c).

4. The Subpoenaed Individuals do not believe, based on their experience at the New York Fed, that the image of the eagle at the top of the "Statement of Readiness" is one that has ever been associated with the New York Fed. Dages Aff. ¶ 10(d), Hennessy Aff. ¶ 11(d).

5. The information under "Details of Financial Instrument/s:" is not familiar to either Mr. Dages or Mr. Hennessy. Dages Aff. ¶ 10(e), Hennessy Aff. ¶ 11(e).

6. The Subpoenaed Individuals do not recognize the numbers appearing after their names on the "Statement of Readiness," and those numbers are not identification numbers associated with them. Dages Aff. ¶ 10(f), Hennessy Aff. ¶ 11(f).

7. The signature on the April 2010 document does not resemble the signatures of Mr. Dages. Dages Aff. ¶ 10(g).

In short, the Subpoenaed Individuals had nothing to do with the "Statement of Readiness," and did not sign it. Likewise, Mr. Dages had nothing to do with the April 10 document, and did not sign it.

**Quashal of a Trial Subpoena is Warranted Where the Subpoenaed Witness Lacks Personal Knowledge of the Subject Matter of the Anticipated Testimony**

The subpoenas should be quashed because the Subpoenaed Individuals have no personal knowledge of the documents about which they would be called to testify. Further, compliance with the subpoenas would work a hardship on the Subpoenaed Individuals, particularly given their 11th hour issuance and Defendant's failure to depose or seek discovery from the New York Fed about the Subpoenaed Individuals' knowledge of the facts at issue.

A criminal defendant's subpoena power and power to compel testimony is not absolute. *See U.S. v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) ("[T]he Sixth Amendment does not by its terms

grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses."). Rather, "a defendant may compel the attendance of a witness only if he can 'make some plausible showing of how their testimony would [be] both material and favorable to his defense.'" *U.S. v. Campbell*, 874 F.2d 838 (1st Cir. 1989) *quoting Valenzuela-Bernal*, 458 U.S. at 859. *See also U.S. v. Cruz-Jiminez*, 977 F.2d 95, 100 (3d Cir. 1992) (citation omitted) ("A mere showing by the accused that some relevant evidence was excluded is insufficient [to establish a violation of the right to compulsory process]; the accused must demonstrate that the testimony would have been both material and favorable to his defense.") *See also U.S. v. Caravajal-Vivanco*, No. 1:06-cr-102 2006, WL 2173376, at *2 (M.D.Pa. Aug. 1, 2006) *quoting Valenzuela-Bernal*, 458 U.S. at 859 ("Evidence is material 'only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.'")

A witness who has no personal knowledge of the matters about which he is expected to be examined cannot offer material testimony, and cannot be compelled to testify. "A witness's testimony will not be material where the witness has no personal knowledge of the fact to which he or she is intended to testify." *U.S. v. Bertoli*, 854 F.Supp. 975, 1080-1087 (citations omitted) (quashing trial subpoena seeking testimony of FBI special agent where defendant seeking to compel testimony could make no proffer about the agent's personal knowledge of the subject of his anticipated testimony). *See also U.S. v. Caming*, 968 F.2d 232, 238 (2d Cir. 1992) (quashal of subpoena proper where the subpoenaed witness "'kn[e]w nothing about the underlying transactions' and had 'no personal knowledge of any of the underlying facts'"); *U.S. v. Tanner*, 941 F.2d 574 (7th Cir. 1991) (no right to compulsory process where "the potential witness could not have provided personal observations concerning relevant and material evidence.")

Finally, the scam at issue in this case is familiar to the New York Fed, which expends substantial resources to educating the public about scams like this and others. Kuhn Decl., ¶¶ 15, 16.

6

On the New York Fed's website, there is a link called "Frauds and Scams." http://www.newyorkfed.org/banking/frauds_scams.html. In the archives section, the bank summarizes the scam as follows:

> **Scam Involving Yohannes Riyadi and/or Wilfredo Saurin**
> *November 2007*
>
> The Federal Reserve is aware of a fraudulent scam involving individuals using the names Yohannes Riyadi and/or Wilfredo Saurin, or persons claiming to be representatives of these two men. In a typical version of this scam, Mr. Riyadi and/or his delegates falsely claim that they have on deposit with the Federal Reserve Bank of New York several U.S. Treasury Checks issued to Mr. Riyadi amounting to billions of dollars.
>
> The Federal Reserve Bank of New York has been contacted by several brokers and financial institutions worldwide inquiring about the validity of this fraudulent account documentation, which is being offered as collateral for lines of credit or other types of asset based financing. The fraudulent scheme includes multiple documents which purport to have the signatures of various Federal Reserve officials, including Chairman Ben Bernanke.
>
> In some instances, individuals involved in this fraudulent scheme claim to have met with Federal Reserve officials and claim to have verified that the alleged account is in order. We have also learned that the fraud may include the purchase of certain documents by the introducing brokers.

http://www.newyorkfed.org/banking/New_York_Fed_archived_fraud_alerts.html. A true and correct copy of a screenshot of this webpage is attached to the Kuhn Decl. as Exhibit F.

In addition to educating the public about such frauds and scams, the New York Fed works with law enforcement agencies to assist their prosecution of those who run this and any other scam. Kuhn Decl., ¶ 18. The New York Fed also receives a large volume of calls and emails from individuals who are victims of this and other scams. *Id.*, ¶ 19.

However, neither Mr. Dages nor Mr. Hennessy has anything to do with this aspect of the New York Fed's work. Mr. Dages is a Senior Vice President in the Financial Markets & Institutions Function, within New York Fed's Emerging Markets and International Affairs Group. Dages Aff. ¶ 5. Mr. Dages's Function analyzes international financial sectors, including such issues as: banking

sector condition and performance credit and funding conditions; systemic risks; supervision and regulation; and associated financial reform and policy issues. *Id.,* ¶ 6. Mr. Dages's Function also analyzes debt and equity market developments in countries under coverage. *Id.,* ¶ 6. As head of this Function, Mr. Dages travels frequently. In fact he is travelling to Turkey during the week of December 8-11, and is unavailable to testify, in the event the motion to quash is denied. *Id.,* ¶ 7.

Mr. Hennessy is a Senior Vice President and the Chief of Staff in the Executive Office of the New York Fed's Financial Institution and Supervision Group. Hennessy Aff. ¶ 5. The Financial Institution Supervision Group ("FISG") supervises and regulates financial institutions in the Federal Reserve System's Second District, over which the New York Fed is delegated supervisory authority by the Board of Governors. *Id.,* ¶ 6. FISG assesses the safety and soundness of domestic banking institutions and operations of foreign banking organizations in the District through periodic onsite evaluation and offsite financial analysis and surveillance. *Id.* FISG also analyzes issues and developments to identify emerging supervisory risks and develop domestic and international supervisory policy. *Id.* As Chief of Staff to the head of FISG, Executive Vice President Sarah Dahlgren, Mr. Hennessy is central to FISG's operations, and deals with practically every issue that requires the attention of senior officers within FISG. *Id.,* ¶ 7.

The foregoing demonstrates that the Subpoenaed Individuals have no knowledge of either the documents at issue.[4] It would be unreasonable and oppressive to require that both interrupt their work to travel to the Court, wait until their testimony is needed, and then spend time testifying only to their lack of knowledge of the "Statement of Readiness," the April 10 document, or any other fact or document at issue. *See* Fed. R. Crim. P. 17(c)(2).[5]

---

[4] Because the New York Fed is not a depository institution, it does not hold custodial accounts for individuals. Kuhn Decl., ¶ 20. In that sense no one at the New York Fed would have personal knowledge of the underlying documents.

[5] The New York Fed and Mr. Dages further contend that service of the Dages Subpoena was improper because it did not comport with Fed. R. Crim. Proc. 17(d) which provides that the server of

**Conclusion**

Based on the foregoing, the subpoenas served on Mr. Dages and Mr. Hennessy should be quashed, and neither should be compelled to testify. Furthermore, any obligations under the subpoena regarding compelled document production should also be quashed.

Dated: New York, New York
December 9, 2014

Respectfully submitted,

/s/

Lawrence A. Durkin
Durkin MacDonald, LLC
SNB Plaza
108 N. Washington Ave., Ste. 1000
Scranton, Pennsylvania 18503
(570) 558-1500
larry@durkinmacdonal.com

/s/

Daniel M. Kuhn (*pro hac vice* pending)
Federal Reserve Bank of New York
33 Liberty Street
New York, New York 10045
(212) 720-2356
(212) 720-8709
Jennifer.Spain@ny.frb.org
Daniel.Kuhn@ny.frb.org

*Attorneys for the
Federal Reserve Bank of New York*

---

the subpoena "must tender to the witness one day's witness-attendance fee and the legal mileage allowance." Further, Defendant is not entitled to require the United States to pay these expenses under Rule 17(b) because he cannot demonstrate "the necessity of the witness's presence for an adequate defense." *See United States v. Cruz-Jiminez*, 977 F.2d 95, 103 (3d Cir. Pa. 1992) (defendant has burden to prove necessity of a witness's testimony under Rule 17(b)). The New York Fed and Mr. Hennessy also contend that Mr. Hennessy is under no obligation to appear at trial as neither he nor his employer have been served with a subpoena.