UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------X
:
UNITED STATES OF AMERICA,              :     JURY TRIAL DEMANDED
:
        Plaintiff,            :     No. 3:12-CR-224
:
v.                                                    :     Hon. A. Richard Caputo
:
RICHARD J. HARLEY,                     :
:
        Defendant.            :
:
-----------------------------------------------------------X

FILED
SCRANTON
DEC - 9 2014
PER _____
DEPUTY CLERK

## MEMORANDUM OF LAW IN SUPPORT OF THE FEDERAL RESERVE BANK OF NEW YORK'S MOTION TO QUASH A SUBPOENA SERVED ON CHRISTOPHER J. McCURDY

The Federal Reserve Bank of New York (the "New York Fed") submits this memorandum in support of the New York Fed's motion to quash a subpoena served upon a former employee, Christopher J. McCurdy.

**The Subpoena Served on Christopher McCurdy**

On December 2, 2014 the New York Fed accepted a subpoena that Defendant Richard Harley caused to be served on a former New York Fed employee, Christopher J. McCurdy (the "McCurdy Subpoena"). The subpoena, attached as Exhibit A to the Declaration of Daniel M. Kuhn in Support of the Federal Reserve Bank of New York's Motion to Quash ("Kuhn Decl."), compels Mr. McCurdy to testify at trial on December 11, 2014. The subpoena also seeks the production of documents "concerning Richard J. Harley, Joseph Hui Kiat and Yohannes Riyadi…" relating to two purported $500,000,000.00 U.S. Treasury checks allegedly held by the New York Fed. The subpoena is identical to another subpoena served on a current New York Fed employee, Gerard Dages, and a subpoena which the Defendant presumably intends to serve on New York Fed employee James Hennessy (together with Mr. McCurdy, the "Subpoenaed Individuals").

1

Certain counts and allegations against Defendant concerning bank fraud involve the alleged validity of two purported United States Treasury checks totaling one billion dollars. Indictment ¶¶ 14-17, 38-44, *U.S. v. Harley*, No. 3:12-CR-224 (M.D.Pa. 2012). There are a number of documents that relate to the two purported $500 million checks, including a "safe keeping receipt," an "extended safe keeping receipt," a "statement of readiness," and related emails, and Mr. McCurdy's name appears on five of the documents. Mr. Harley apparently contends that Mr. McCurdy can offer testimony to help him establish the validity of the two checks and documents at issue. Defendant is incorrect – Mr. McCurdy cannot offer any material or favorable testimony for Mr. Harley as he has no personal knowledge of the facts or documents at issue.

**The Documents Likely at Issue**

The following is a summary of the documents that are likely to be the subject of Mr. McCurdy's testimony. In describing these documents and their contents the New York Fed does mean to imply that the language used in the documents are commonly used or recognized by the New York Fed. In fact, much of the language is nonsensical.

Importantly, while the New York Fed produced certain of the documents likely at issue, those documents were originally received from Mr. Harley. Kuhn Decl., ¶ 4. None of the documents likely at issue were found in the New York Fed's records unless they were originally provided to the New York Fed by Defendant. *Id.* Sahil Godiwala, a former employee of the New York Fed, testified at the trial that he exchanged emails and phone calls with Mr. Harley. Mr. Godiwala was an attorney and an Officer in the Enforcement, Litigation, Protection, and Investigation Division (now the Enforcement, Litigation and Investigation Division ("ELI") within the New York Fed's Legal Function. Kuhn Decl., ¶ 5. Attorneys and Investigators in ELI support the New York Fed's efforts to combat frauds and scams in which criminals invoke the name of the Federal Reserve System and banks within the Federal Reserve System to deceive the public. *Id.*, ¶ 6.

That often requires interaction with victims and perpetrators of a particular fraud or scam. *Id.*, ¶ 6. As Mr. Godiwala testified, in April 2011, he interacted with the Defendant concerning the two $500 million checks, and Defendant emailed a number of documents to Mr. Godiwala, including images of the two checks and the "Statement of Readiness." Additional documents were recently provided to the New York Fed by Defendant's counsel, and the New York Fed had not previously seen them and has not produced them in connection with this case. Kuhn Decl., ¶ 7.

One of the two emails likely at issue was allegedly sent by an email account "chrismccurdy64@aol.com" at 3:33 a.m. on November 10, 2008 (the "Nov. 10 email"). The Nov. 10 email is attached to the Kuhn Decl., as Exhibit B. The Nov. 10 email was addressed to a Yohannes Riyadi, at email address "yriyadi@gmail.com," its subject line reads "Cheque_Joseph," and it has no text. Kuhn Decl., Ex. B. The Nov. 10 email was subsequently forwarded by the Riyadi account to an account "josefteo@gmail.com," which appears to be an email account for Josef Teo, presumably Joseph Teo Hui Kiat. *Id.* The email was then forwarded from the Josef Teo email account to what appears to be Richard Harley's email account. *Id.* The Nov. 10 email purports to attach images of two checks each appearing to be United States Treasury checks in the amount of $500 million. *Id.* Both checks appear to be made out to a "Mr. Joseph Teo Hui Kiat" and, also on the "Pay to the Order of" line, the "Federal Reserve Bank of New York." *Id.* They have a "value date" of March 31, 2011, and say "Valid After Good Value." *Id.*

Another email was allegedly sent on May 4, 2009 at 3:17 pm from the "chrismccurdy64@aol.com" email account to the "vriyadi@gmail.com" account (the "May 4 email"). The May 4 email is attached to the Kuhn Decl. as Exhibit C. The May 4 email allegedly attaches a "to whom it may concern letter," and has no text. Kuhn Decl., Ex. C. Like the November 4 email, the May 4 email was subsequently forwarded by Yohannes Riyadi to Josef Teo Hui Kiat, who apparently forwarded it to Richard Harley's email account on May 4, 2009. *Id.* The attachment

3

to the May 4 email, the "to whom it may concern letter," is a letter also dated May 2009.[1] The letter purports to be from the Federal Reserve Board, though it also appears to be from a "Federal Reserve Bank" addressed at 33 Liberty Street, New York, New York, which is the address of the Federal Reserve Bank of New York, but not the name. *Id.* The letter claims to "advise[ ] that checks no. 212210031730, 212210031731 and the Safe Keeping receipt no 021088506 dated, April 14, 2008, issued to Mr. Joseph Teo Hui Kiat in the amount of one billion United States dollars (USD 1,000,000,000.00) are valid and negotiable." The letter is allegedly signed by Ben S. Bernanke, identified as "Chairman," and Donald L. Kohn, identified as "Vice Chairman." *Id.* It is worth noting that at this time Ben Bernanke was the Chairman and Donald Kohn was the Vice Chairman of the Board of Governors of the Federal Reserve System, which is located in Washington D.C., and neither had any position in the New York Fed. Kuhn Decl., ¶ 10.

The New York Fed was recently provided with two additional emails purporting to be sent from the "chrismccurdy64@aol.com" email account to the "vriyadi@gmail.com" email account.[2] One email appears to have been originally sent on February 17, 2009 at 6:21 a.m. and then forwarded on May 18, 2009 (the "Feb. 17 email"). The Feb. 17 email is attached to the Kuhn Decl. as Exhibit D. As with the other emails, the Feb. 17 email was sent to Yohannes Riyadi, who forwarded it to Josef Teo, who then forwarded it to the Defendant. Kuhn Decl., Ex. D. The subject line is "SKR_Joseph Teo Hui Kiat_200B." *Id.* The attachments to the email were not provided to the New York Fed, but the email appears to attach six files also called "SKR_Joseph Teo Hui Kiat__200B." *Id.*, Kuhn Decl., ¶ 11.

The other email recently provided to the New York Fed was purportedly sent from

---

[1] The May 4, 2009 "To whom it may concern" letter was provided to the New York Fed by Defendant's counsel on December 4, 2014, and was not previously in the New York Fed's possession. Kuhn Decl., ¶ 9.
[2] The Feb. 17 email was provided to the New York Fed by Defendant's counsel on December 4, 2014, and was not previously in the New York Fed's possession. Kuhn Decl., ¶ 11.

4

"chrismccurdy64@aol.com" on January 12, 2009 at 3:54 a.m. (the "Jan. 12 email"). The Jan. 12 email is attached to the Kuhn Decl. as Exhibit E. The Jan. 12 email was also forwarded by "yriyadi@gmail.com" to Josef Teo, and ultimately to the Defendant. Kuhn Decl., Ex. E. The subject line on the Jan. 12 email reads "SKR_Yohannes Riyadi_500B." *Id.* The attachments to the email were not provided to the New York Fed, but the email appears to attach six files also called "SKR_Yohannes Riyadi_500B." Kuhn Decl., ¶ 12.

Mr. McCurdy's name also appears on another document, dated April 2010 (the "April 2010 document").[3] The April 2010 document is attached to the Kun Decl. as Exhibit F. Mr. McCurdy and another Subpoenaed Individual, Gerard Dages, purportedly signed a document that appears to be a form document from the "Federal Reserve Board" and the "Federal Reserve Bank," that confirms that a "TRUEWORTH HODINGS, LTD HAS ON ACCOUNT; # Number, ONE TRILLION EURO LOCATED AT HSBC, LONDON," and goes on to make representations about how the funds are "NON LEASED FUNDS" and are "CLEAR CLEAN AND UNENCUMBERED CASH FUNDS AVAILABLE FOR ANY TYPE OF CREDIT LINE." Kuhn Decl., Ex. F.

The following facts, which are averred to by Mr. McCurdy in an affidavit attached to the Kuhn Decl. as Exhibit G ("McCurdy Affidavit" or "McCurdy Aff."), demonstrate that Mr. McCurdy has no knowledge of the underlying facts at issue in this trial, and particularly about the documents about which he would be called to testify:

1. The email address "chrismccurdy64@aol.com" is not and has never been an email address created by or used by Mr. McCurdy. McCurdy Aff. ¶ 8(a).

2. Mr. McCurdy never used a personal email account to conduct business relating to the New York Fed, accordingly, even if this was his email address – and it is not – under no circumstances would he ever have used it to conduct New York Fed-related business. McCurdy Aff. ¶ 8(b).

---

[3] The April 2010 letter was provided to the New York Fed by Defendant's counsel on December 4, 2014, and was not previously in the New York Fed's possession. Kuhn Decl., ¶ 13.

5

3.      To the best of Mr. McCurdy's recollection, he has never sent an email to "yriyadi@gmail.com," and Mr. McCurdy did not email "yriyadi@gmail.com" on November 10, 2008, January 12, 2009, February 17, 2009, or May 4, 2009. McCurdy Aff. ¶ 8(c).

4.      Mr. McCurdy is not familiar with a Yohannes Riyadi or a Joseph Teo Hui Kiat, nor is he familiar with Richard Harley. McCurdy Aff. ¶ 8(d).

5.      Mr. McCurdy has never seen the two $500 million checks allegedly attached to the Nov. 10 email. McCurdy Aff. ¶ 8(e).

6.      Mr. McCurdy has never seen the "to whom it may concern letter" attached to the May 4, 2009 email. McCurdy Aff. ¶ 8(f).

7.      Mr. McCurdy has never seen, and did not sign, the April 2010 document. In fact, the signature appearing on the April 2010 document does not match his signature. McCurdy Aff. ¶ 9(g). In addition, Mr. McCurdy retired from the New York Fed in December, 2009, so he would not have been conducting any business on its behalf in April 2010. McCurdy Aff. ¶ 4.

In short, the emails and documents at issue are not those of Mr. McCurdy. It is not clear how the emails came to be, but it was not from an email account belonging to Mr. McCurdy. Further, the signature on the April 2010 document purporting to be Mr. McCurdy's signature is not in fact his signature.

**Quashal of a Trial Subpoena is Warranted Where the Subpoenaed Witness Lacks Personal Knowledge of the Subject Matter of the Anticipated Testimony**

The subpoena should be quashed because Mr. McCurdy has no personal knowledge of the document about which he would be called to testify. Further, compliance with the subpoena would work a hardship on Mr. McCurdy, particularly given its 11th-hour issuance and Defendant's failure to seek discovery about Mr. McCurdy's knowledge of the facts at issue.

A criminal defendant's subpoena power and power to compel testimony is not absolute. *See U.S. v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) ("[T]he Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses."). Rather, "a defendant may compel the attendance of a witness only if he can 'make

some plausible showing of how their testimony would [be] both material and favorable to his defense.'" *U.S. v. Campbell*, 874 F.2d 838 (1st Cir. 1989) *quoting Valenzuela-Bernal*, 458 U.S. at 859. *See also U.S. v. Cruz-Jiminez*, 977 F.2d 95, 100 (3d Cir. 1992) (citation omitted) ("A mere showing by the accused that some relevant evidence was excluded is insufficient [to establish a violation of the right to compulsory process]; the accused must demonstrate that the testimony would have been both material and favorable to his defense.") *See also U.S. v. Caravajal-Vivanco*, No. 1:06-cr-102 2006, WL 2173376, at *2 (M.D.Pa. Aug. 1, 2006) *quoting Valenzuela-Bernal*, 458 U.S. at 859 ("Evidence is material 'only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.'")

A witness who has no personal knowledge of the matters about which he is expected to be examined cannot offer material testimony, and cannot be compelled to testify. "A witness's testimony will not be material where the witness has no personal knowledge of the fact to which he or she is intended to testify." *U.S. v. Bertoli*, 854 F.Supp. 975, 1080-1087 (citations omitted) (quashing trial subpoena seeking testimony of FBI special agent where defendant seeking to compel testimony could make no proffer about the agent's personal knowledge of the subject of his anticipated testimony). *See also U.S. v. Caming*, 968 F.2d 232, 238 (2d Cir. 1992) (quashal of subpoena proper where the subpoenaed witness "'kn[e]w nothing about the underlying transactions' and had 'no personal knowledge of any of the underlying facts'"); *U.S. v. Tanner*, 941 F.2d 574 (7th Cir. 1991) (no right to compulsory process where "the potential witness could not have provided personal observations concerning relevant and material evidence.")

Mr. McCurdy's affidavit establishes that he lacks personal knowledge of the two purported $500 million checks, the emails from "mccurdy64@aol.com," the April 2010 document, or any other related documents. Further, Mr. McCurdy lives in New York City. McCurdy Affidavit ¶ 6. It would be unreasonable and oppressive to require that he travel to the Court, wait until his testimony

is needed, and then spend time testifying to only his lack of knowledge of the documents at issue. *See* Fed. R. Crim. P. 17(c)(2).[4]

---

[4] The New York Fed and Mr. McCurdy further contend that service of the McCurdy Subpoena was improper because it did not comport with Fed. R. Crim. Proc. 17(d) which provides that the server of the subpoena "must tender to the witness one day's witness-attendance fee and the legal mileage allowance." Further, Defendant is not entitled to require the United States to pay these expenses under Rule 17(b) because he cannot demonstrate "the necessity of the witness's presence for an adequate defense." *See United States v. Cruz-Jiminez*, 977 F.2d 95, 103 (3d Cir. Pa. 1992) (defendant has burden to prove necessity of a witness's testimony under Rule 17(b)).

**Conclusion**

Based on the foregoing, the subpoena served on Mr. McCurdy should be quashed, and he should not be compelled to testify. Furthermore, any obligations under the subpoena regarding compelled document production should also be quashed.

Dated: New York, New York
December 9, 2014

Respectfully submitted,

_____
Lawrence A. Durkin
Durkin MacDonald, LLC
SNB Plaza
108 N. Washington Ave., Ste. 1000
Scranton, Pennsylvania 18503
(570) 558-1500
larry@durkinmacdonal.com

_____
Daniel M. Kuhn (*pro hac vice* pending)
Jennifer E. Spain (*pro hac vice* pending)
Federal Reserve Bank of New York
33 Liberty Street
New York, New York 10045
(212) 720-2356
(212) 720-8709
Jennifer.Spain@ny.frb.org
Daniel.Kuhn@ny.frb.org

*Attorneys for the
Federal Reserve Bank of New York*