FILED
SCRANTON

DEC - 9 2014

PER_____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :
          :
       v.                 :      3:CR-12-224
          :
RICHARD HARLEY          :     (CAPUTO, J.)
          :
             Defendant    :

## BRIEF IN SUPPORT OF THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S MOTION TO QUASH A SUBPOENA ISSUED TO DR. BEN S. BERNANKE, FORMER CHAIRMAN OF THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM

### FACTUAL BACKGROUND

On December 4, 2014, defendant Richard J. Harley served a subpoena for trial testimony and documents on Dr. Bernanke at his office in Washington, D.C. ("Subpoena"). The Subpoena, which is dated November 26, 2014, is attached hereto as Exhibit A. The Subpoena calls for Dr. Bernanke to appear and testify at trial in this matter at 9:00 a.m. on Thursday, December 11, 2014, at the United States

Courthouse in Wilkes-Barre, Pennsylvania.  The Subpoena further calls for Dr. Bernanke to produce at that time "[a]ll documents or records in [his] possession or under [his] control concerning Richard J. Harley, Joseph Teo Hui Kiat and Yohannes Riyadi, including but not limited to" a series of documents appended to the Subpoena.  Exhibit A at 1.

As set forth in his declaration attached hereto as Exhibit B, Dr. Bernanke did not sign the documents attached to the Subpoena that purport to show his signature and never saw them before receiving the Subpoena.  He has no knowledge whatsoever of the matters addressed by the Subpoena and has no documents in his possession, custody, or control concerning Richard J. Harley, Joseph Teo Hui Kiat, or Yohannes Riyadi.  Exhibit B at 1, ¶¶ 2-3.

## ISSUE BEFORE THIS COURT

**Whether This Court Should Quash the Subpoena Issued to Dr. Ben S. Bernanke, the former Chairman of the Board of Governors of the Federal Reserve System, because compliance with the subpoena would be unreasonable and oppressive.**

**ARGUMENT**

Pursuant to the Federal Rules of Criminal Procedure, the Court may quash a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Compliance with the Subpoena would be both unreasonable and oppressive in this case.

As set forth in his declaration attached hereto as Exhibit B, Dr. Bernanke did not sign the documents attached to the Subpoena that purport to show his signature and never saw them before receiving the Subpoena. He has no knowledge whatsoever of the matters addressed by the Subpoena and he has no documents in his possession, custody, or control concerning Richard J. Harley, Joseph Teo Hui Kiat, or Yohannes Riyadi. As a result, there is nothing relevant about which Dr. Bernanke could testify and it would be both unreasonable and oppressive for him to take substantial time from his busy schedule and travel several hundred miles to testify to matters to which he has no independent knowledge whatsoever.

The unreasonableness of the Subpoena is underscored by the fact that federal courts have long shielded current and former high

3

government officials such as Dr. Bernanke from testifying about matters for which they lack relevant first-hand knowledge or for which testimony is obtainable from other sources. *See, e.g., United States* v. *Morgan*, 313 U.S. 409, 421-22 (1941) (rejecting compelled testimony of the Secretary of Agriculture and suggesting that the practice of calling high ranking government officials as witnesses should be discouraged); *In re U.S.*, 985 F.2d 510, 511-12 (11th Cir. 1993) (granting writ of mandamus and quashing subpoena for testimony of Food and Drug Administration Commissioner in criminal trial because defendants failed to show the "extraordinary circumstances" necessary to justify such testimony); *Robinson v. City of Philadelphia*, No. 04-3948, 2006 WL 1147250, at *2 (E.D. Pa. Apr. 26, 2006) ("'A party seeking the deposition of a high ranking government official must demonstrate that his testimony is likely to lead to the discovery of admissible evidence, is essential to that party's case and that this evidence is not available through any alternate source or less burdensome means.'" (quoting *Hankins v. City of Philadelphia*, No. 95-1449, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996))).

4

The defendant's apparent belief that Dr. Bernanke's testimony will assist him in demonstrating the validity of the documents attached to the Subpoena is not supportable. As his sworn declaration makes clear, Dr. Bernanke did not sign the documents and would so testify at trial. It cannot be the case that individuals may compel the testimony of high-ranking government officials merely by forging their signature.

## CONCLUSION

For the foregoing reasons, the Board of Governors of the Federal Reserve System and Dr. Bernanke respectfully request that their motion be granted and that the Subpoena be quashed.[1]

---

[1] On Thursday, December 4, 2014, Katherine H. Wheatley, Associate General Counsel, Board of Governors of the Federal Reserve System, called to ask that the Subpoena be withdrawn given Dr. Bernanke's complete lack of knowledge about the issues or the documents attached to the Subpoena, noting that we would be forced to file a motion to quash if the Subpoena were not voluntarily withdrawn. On December 5, Defendant's counsel advised that the defendant had not authorized him to withdraw the Subpoena.

Respectfully Submitted,

  /s/ Joshua P. Chadwick
Joshua P. Chadwick, Senior Counsel
Bar ID# DC 502279
Board of Governors of the
        Federal Reserve System
20th and C Streets, N.W.
Washington, D.C.  20551
Telephone:  (202) 263-4835
Facsimile:  (202) 736-5615
Dated:  December 9, 2014       joshua.p.chadwick@frb.gov

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee of the Board of Governors of the Federal Reserve System and is a person of such age and discretion as to be competent to serve papers.

That on December 9, 2014, he served a copy of the attached:

**BRIEF IN SUPPORT OF THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S MOTION TO QUASH A SUBPOENA ISSUED TO DR. BEN S. BERNANKE, FORMER CHAIRMAN OF THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM**

by electronic mail on:

Address:

Joseph A. O'Brien, Esq.
Oliver, Price & Rhodes
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA  18411
jaob@oprlaw.com

/s/ Joshua P. Chadwick
Joshua P. Chadwick
Senior Counsel

7

AO 89 (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT
for the

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   3:12-CR-224 |
| Richard J. Harley | ) | Honorable A. Richard Caputo |
| _____ | ) | |
| Defendant | ) | |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To: Ben Bernanke
    The Brookings Institution
    1775 Massachusetts Avenue NW
    Washington, DC  20036

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: Max Rosenn United States Courthouse | Courtroom No.:  3 |
|---|---|
| 197 South Main St., Wilkes Barre, PA | Date and Time: December 11, 2014 9:00 A.M. |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*: All documents or records in your possession or under your control concerning Richard J. Harley, Joseph Teo Hui Kiat and Yohannes Riyadi, including but not limited to, (a) documents and records related to Safe Keeping Receipt dated February 16, 2009`;(b) documents and records related to Reserved Funds Letter dated February 16, 2009; (c) documents and records related to Extend validity of Safe Keeping Receipt dated April 14, 2008; (d) Confidential Memo dated April 14, 2008 reference: PRNY/0614738-04; and (e) To whom it may concern letter dated May 4, 2009, reference: PRNY/007136-05.  Documents attached.

(SEAL)

Date: *11 26 2014*

CLERK OF COURT  MARIA E. ELKINS

_____
Signature of Clerk or Deputy Clerk

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  Richard J. Harley
_____ , who requests this subpoena, are:

Joseph A. O'Brien, Esquire
Oliver, Price & Rhodes
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA  18411
570-585-1200
jaob@oprlaw.com

## EXHIBIT A

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case (Page 2)

Case No.

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____                    _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc:

EXHIBIT A



**FEDERAL RESERVE BANK**
33 LIBERTY STREET
NEW YORK, NEW YORK, 10045, U.S.A.
PHONE : (212) 720 5000  FAX : (212) 720 6331



Date  :  February 16, 2009
Ref.   :  FRNY/0035815-02

## SAFE KEEPING RECEIPT

We, The Federal Reserve Bank of New York, located at 33 Liberty Street, New York, New York 10045, U.S.A. with Telephone Number (212) 720 5000; Fax Number (212) 720 6331; SWIFT Code: FRNY US 33, hereby confirm with full authority and responsibility that our valued client has deposited with us in Custodial Account Number 021088506 funds / assets of which details are outlined as follows:

| | |
|---|---|
| Type of Funds / Assets | U.S. Treasury Checks |
| Check Numbers | 2122 100 24065 up to 2122 100 24464 |
| Registration on FED Screen | Access Code: YR-FED-40123887-2008-566135-2009 Security Code: 507313 YR 78 ID Number: YR-FED-6505829-566135-2009 |
| Date of Issue | February 16, 2009 |
| Value Date: | February 16, 2014 callable and renewable annually up to Five (5) year |
| Check Denomination | Five Hundred Million United States Dollars (USD 500,000,000.00) |
| Total Amount | Two Hundred Billion United States Dollars (USD 200,000,000,000.00) |

These funds / assets have been placed in our custodial safekeeping under Custodial Account No. 021088506, Custodial Account Name: Yohannes Riyadi, Safekeeping Period: from May 1, 2006 to May 1, 2016.

This Safekeeping Receipt is issued and effective from the date of issuance for the benefit of the Custodial Trustee and Signatory of the aforesaid funds / assets, namely Mr. Joseph Teo Hui Kiat, holder of Singapore Passport No. 0059881Z or his assignees.

We further confirm that these funds / assets are good, clean, cleared and of non-criminal origin, free and clear of all liens and encumbrances, and shall remain so for the above-stated Safekeeping Period.

EXHIBIT A





This Safekeeping Receipt is an operative instrument, and it is confirmed, irrevocable, unconditional, divisible, transferable, and assignable without presentation to us.

With the authority of the signatures below, we hereby add our authentication and stand ready to confirm authenticity by Grey Screen only to any responsible inquiring bank. On request of an original copy of this Safekeeping Receipt will be delivered via bonded courier bank-to-bank.

Yours Sincerely,

Ben S. Bernanke
Chairman

Donald L. Kohn
Vice Chairman

EXHIBIT A



**FEDERAL RESERVE BANK**
33 LIBERTY STREET
NEW YORK, NEW YORK, 10045, U.S.A.
PHONE : (212) 720 5000  FAX : (212) 720 6331



Date   : February 16, 2009
Ref.   : FRNY/0035824-02

To:   Mr. Joseph Teo Hui Kiat
      Custodial Trustee
      Custodial Account No.: 021088506

Dear Mr. Joseph Teo Hui Kiat,

### Reserved Funds Letter

With reference to your request, we hereby confirm with full authority and bank responsibility that the Federal Reserve Bank, New York has blocked and reserved your U.S. Treasury Check Numbers 2122 10024065 up to 2122 10024464 inclusively with a total amount of Two Hundred Billion United States Dollars (USD 200,000,000,000.00) for the benefit of Mr. Joseph Teo Hui Kiat, holder of Singapore Passport No. 0069881Z.

These U.S. Treasury Checks have been blocked and reserved from the date of this letter for one year and one day renewable up to five (5) years. We further confirm that these Treasury Checks can be verified through a responsible bank inquiry.

Yours Sincerely,

Ben S. Bernanke
Chairman

Donald L. Kohn
Vice Chairman

EXHIBIT A



The Federal Reserve Board

**FEDERAL RESERVE BANK**
33 LIBERTY STREET
NEW YORK, NEW YORK, 10045, U.S.A.
PHONE : (212) 720 5000  FAX : (212) 720 6331

Date  : April 14, 2008
Ref.   : FRNY/0721765-04

Extend validity of Safe Keeping Receipt

We, The Federal Reserve Bank of New York, Located at 33 Liberty Street, new York, New York 10045, U.S.A. with telephone number 212 720 5000; Fax Number 212 720 6331: Swift Code: FRNY US 33, hereby confirm with full authority and responsibility that as request of our valued client we extend the validity of SKR number FRNY/0518844-03 up to April 15, 2010.

| | |
|---|---|
| Type of Funds/Assets: | U.S. Treasury Checks |
| Check Numbers: | 212210031730 up to 212210031731 |
| Registration on FED Screen | - Access Code: YR-FED-11456773-1B-071066-2006 <br> -Security Code: 382265 BIR 37 <br> -ID Number: YR-FED-2328819-071066-2006:- |
| Date of Issue: | March 31, 2006 |
| Value Date: | March 31, 2011, Callable and renewable annually |
| Check Denomination: | Five Hundred Million United States Dollars <br> (USD 500,000,000.00) |
| Total Amount: | One Billion United States Dollars <br> (USD 1,000,000,000.00) |

These funds/Assets have been placed in our custodial safekeeping under Custodial Account No. 021088506, Account Name: Yohannes Riyadi, Safekeeping Period: from March 22, 2006 to April 15, 2010.

This Safekeeping Receipt is issued and effective from date of issuance for the benefit of the Custodial Trustee and Signatory of the aforesaid funds/assets, namely Mr. Joseph Teo Hui Kiat, holder of Singaporean Passport No. 0059881Z or his assignees.

We, Federal Reserve Bank hereby confirm new Confidential Memo per attached.

Yours sincerely,

**Ben S. Bernanke**
Chairman

Donald L. Kohn
Vice Chairman

EXHIBIT A



### The Federal Reserve Board

**FEDERAL RESERVE BANK**
33 LIBERTY STREET
NEW YORK, NEW YORK, 10045, U.S.A.
PHONE : (212) 720 5000  FAX : (212) 720 6331

DATE    :    APRIL 14, 2008
REF.    :    FRNY/0614738-04

## CONFIDENTIAL MEMO

TRANSACTION CODE         :    FRNY/0518844-03
SELLER'S REF. CODE       :    938-169-4341SB
PRINCIPAL SELLER         :    MR. JOSEPH TEO HUI KIAT
                              SINGAPOREAN PASSPORT NO.0059881Z
PRINCIPAL BUYERS         :    BANK OPERATIONS
ISSUER OF CHECKS         :    FEDERAL RESERVE BANK (CENTRAL BANK)

<u>SCREENING PROCEDURES :</u>

1. ENTER THE ACCESS CODE FOR           :   <u>EBU841RI – FRNYUS33FX1</u>
2. ENTER THE SECURITY CODE             :   <u>VDL910345</u>
3. GO TO RELATED CODE                  :   <u>EBU841RI</u>
4. ENTER THE NET CODE                  :   <u>684109</u>
5. ENTER THE FOLLOWING ACCESS CODE     :   <u>EBU841RI</u>

   CUSIP            :    DLA342991
   SWIFT CODE       :    FRNYUS33FX1
   SCREENING CODE   :    851954-04
   ISIN             :    INA458198333
   COMMAND CODE     :    696-731-158
   DTC              :    761886
   UWRTR            :    22DLA22DA-TD 3410

6. FOLLOW THE INSTRUCTIONS ON SCREEN AS APPROPRIATE FOR:
   a.    OPTION 1    : TO BLOCK THE BANK INSTRUMENT CONCERNED
   b.    OPTION 2
   c.    OPTION 3

7. IF ANY OF THE AFOREMENTIONED OPTIONS IS NOT SELECTED, THE SAID BANK INSTRUMENT WILL GO OFF FROM THE SCREEN

YOURS SINCERELY,

BEN S. BERNANKE
CHAIRMAN

DONALD L. KOHN
VICE CHAIRMAN

EXHIBIT A



The Federal Reserve Bank

**FEDERAL RESERVE BANK**
33 LIBERTY STREET
NEW YORK. NEW YORK. 10045. U.S.A.
PHONE : (212) 720 5000  FAX : (212) 720 6331

Date:  May 4, 2009
Ref.:  FRNY/00107136-05

### To whom it may concern:

Please be advised that checks no. 212210031730, 212210031731 and the Safe Keeping receipt no. 021088506 dated, April 14, 2008, issued to Mr. Joseph Teo Hui Kiat in the amount of one billion United States dollars (USD 1,000,000,000.00) are valid and negotiable.

Yours Sincerely,

Ben S. Bernanke
Chairman

Donald L. Kohn
Vice Chairman

EXHIBIT A

 The Federal Reserve Board

 COPY

**FEDERAL RESERVE BANK**
33 LIBERTY STREET
NEW YORK, NEW YORK, 10045, U.S.A.
PHONE : (212) 720 5000, FAX : (212) 720 6331

Date    :   February 16, 2009
Ref.    :   FRNY/0035815-02

## SAFE KEEPING RECEIPT

We, The Federal Reserve Bank of New York, located at 33 Liberty Street, New York, New York 10045, U.S.A. with Telephone Number (212) 720 5000; Fax Number (212) 720 6331; SWIFT Code: FRNY US 33, hereby confirm with full authority and responsibility that our valued client has deposited with us in Custodial Account Number 021088506 funds / assets of which details are outlined as follows:

| | |
|---|---|
| Type of Funds / Assets | U.S. Treasury Checks |
| Check Numbers | 2122 100 24065 up to 2122 100 24464 |
| Registration on FED Screen | Access Code: YR-FED-40123887-200B-566135-2009<br>Security Code: 507313 YR 78<br>ID Number: YR-FED-6505829-566135-2009 |
| Date of Issue | February 16, 2009 |
| Value Date: | February 16, 2014 callable and renewable annually up to Five (5) year |
| Check Denomination | Five Hundred Million United States Dollars (USD 500,000,000.00) |
| Total Amount | Two Hundred Billion United States Dollars (USD 200,000,000,000.00) |

These funds / assets have been placed in our custodial safekeeping under Custodial Account No. 021088506, Custodial Account Name: Yohannes Riyadi, Safekeeping Period: from May 1, 2006 to May 1, 2016.

This Safekeeping Receipt is issued and effective from the date of Issuance for the benefit of the Custodial Trustee and Signatory of the aforesaid funds / assets, namely Mr. Joseph Teo Hui Kiat, holder of Singapore Passport No. 0059881Z or his assignees.

We further confirm that these funds / assets are good, clean, cleared and of non-criminal origin, free and clear of all liens and encumbrances, and shall remain so for the above-stated Safekeeping Period.

EXHIBIT A



The Federal Reserve Board



This Safekeeping Receipt is an operative instrument, and it is confirmed, irrevocable, unconditional, divisible, transferable, and assignable without presentation to us.

With the authority of the signatures below, we hereby add our authentication and stand ready to confirm authenticity by Grey Screen only to any responsible inquiring bank. On request of an original copy of this Safekeeping Receipt will be delivered via bonded courier bank-to-bank.

Yours Sincerely,

Ben S. Bernanke
Chairman

Donald L. Kohn
Vice Chairman

EXHIBIT A



**The Federal Reserve Board**

**FEDERAL RESERVE BANK**
33 LIBERTY STREET
NEW YORK, NEW YORK, 10045, U.S.A.
PHONE : (212) 720 5000  FAX : (212) 720 6331

COPY

Date : February 16, 2009
Ref. : FRNY/0035824-02

To: Mr. Joseph Teo Hui Kiat
Custodial Trustee
Custodial Account No.: 021088506

Dear Mr. Joseph Teo Hui Kiat,

### Reserved Funds Letter

With reference to your request, we hereby confirm with full authority and bank responsibility that the Federal Reserve Bank, New York has blocked and reserved your U.S. Treasury Check Numbers 2122 10024065 up to 2122 10024464 inclusively with a total amount of Two Hundred Billion United States Dollars (USD 200,000,000,000.00) for the benefit of Mr. Joseph Teo Hui Kiat, holder of Singapore Passport No. 0059881Z.

These U.S. Treasury Checks have been blocked and reserved from the date of this letter for one year and one day renewable up to five (5) years. We further confirm that these Treasury Checks can be verified through a responsible bank inquiry.

Yours Sincerely,

Ben S. Bernanke
Chairman

Donald L. Kohn
Vice Chairman

EXHIBIT A



The Federal Reserve Board

**FEDERAL RESERVE BANK**
33 LIBERTY STREET
NEW YORK. NEW YORK. 10045. U.S.A.
PHONE : (212) 720 5000  FAX : (212) 720 6331

Date  : April 14, 2008
Ref.   : FRNY/0721765-04

Extend validity of Safe Keeping Receipt

We, The Federal Reserve Bank of New York, Located at 33 Liberty Street, new York, New York 10045, U.S.A. with telephone number 212 720 5000; Fax Number 212 720 6331: Swift Code: FRNY US 33, hereby confirm with full authority and responsibility that as request of our valued client we extend the validity of SKR number FRNY/0518844-03 up to April 15, 2010.

| | |
|---|---|
| Type of Funds/Assets: | U.S. Treasury Checks |
| Check Numbers: | 212210031730 up to 212210031731 |
| Registration on FED Screen | - Access Code: YR-FED-11456773-1B-071066-2006 |
| | -Security Code: 382265 BIR 37 |
| | -ID Number: YR-FED-2328819-071066-2006 :- |
| Date of Issue: | March 31, 2006 |
| Value Date: | March 31, 2011, Callable and renewable annually |
| Check Denomination: | Five Hundred Million United States Dollars (USD 500,000,000.00) |
| Total Amount: | One Billion United States Dollars (USD 1,000,000,000.00) |

These funds/Assets have been placed in our custodial safekeeping under Custodial Account No. 021088506, Account Name: Yohannes Riyadi, Safekeeping Period: from March 22, 2006 to April 15, 2010.

This Safekeeping Receipt is issued and effective from date of issuance for the benefit of the Custodial Trustee and Signatory of the aforesaid funds/assets, namely Mr. Joseph Teo Hui Kiat, holder of Singaporean Passport No. 0059881Z or his assignees.

We, Federal Reserve Bank hereby confirm new Confidential Memo per attached.

Yours sincerely,

**Ben S. Bernanke**
Chairman

**Donald L. Kohn**
Vice Chairman

EXHIBIT A



## The Federal Reserve Board

**FEDERAL RESERVE BANK**
33 LIBERTY STREET
NEW YORK, NEW YORK. 10045, U.S.A.
PHONE : (212) 720 5000  FAX : (212) 720 6331

DATE :   APRIL 14, 2008
REF.  :   FRNY/0614738-04

### CONFIDENTIAL MEMO

TRANSACTION CODE        :   FRNY/0518844-03
SELLER'S REF. CODE      :   938-169-4341SB
PRINCIPAL SELLER        :   MR. JOSEPH TEO HUI KIAT
                            SINGAPOREAN PASSPORT NO.0059881Z
PRINCIPAL BUYERS        :   BANK OPERATIONS
ISSUER OF CHECKS        :   FEDERAL RESERVE BANK (CENTRAL BANK)

<u>SCREENING PROCEDURES :</u>

1.  ENTER THE ACCESS CODE FOR        :   <u>EBU841RI – FRNYUS33FX1</u>
2.  ENTER THE SECURITY CODE          :   <u>VDL910345</u>
3.  GO TO RELATED CODE               :   <u>EBU841RI</u>
4.  ENTER THE NET CODE               :   <u>684109</u>
5.  ENTER THE FOLLOWING ACCESS CODE  :   <u>EBU841RI</u>

    CUSIP           :   DLA342991
    SWIFT CODE      :   FRNYUS33FX1
    SCREENING CODE  :   851954-04
    ISIN            :   INA458198333
    COMMAND CODE    :   696-731-158
    DTC             :   761886
    UWRTR           :   22DLA22DA-TD 3410

6.  FOLLOW THE INSTRUCTIONS ON SCREEN AS APPROPRIATE FOR:
    a.   OPTION 1   :   TO BLOCK THE BANK INSTRUMENT CONCERNED
    b.   OPTION 2
    c.   OPTION 3

7.  IF ANY OF THE AFOREMENTIONED OPTIONS IS NOT SELECTED, THE SAID BANK
    INSTRUMENT WILL GO OFF FROM THE SCREEN

YOURS SINCERELY,

BEN S. BERNANKE
CHAIRMAN

DONALD L. KOHN
VICE CHAIRMAN

### EXHIBIT A



**FEDERAL RESERVE BANK**
33 LIBERTY STREET
NEW YORK. NEW YORK. 10045. U.S.A.
PHONE : (212) 720 5000  FAX : (212) 720 6331

Date:  May 4, 2009
Ref.:  FRNY/00107136-05

### To whom it may concern:

Please be advised that checks no. 212210031730. 212210031731 and the Safe Keeping receipt no. 021088506 dated, April 14, 2008, issued to Mr. Joseph Teo Hui Kiat in the amount of one billion United States dollars (USD 1,000,000,000.00) are valid and negotiable.

Yours Sincerely,

Ben S. Bernanke
Chairman

Donald L. Kohn
Vice Chairman

EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | )   3:CR-12-224 |
| | ) |
| | )   (Judge Caputo) |
| RICHARD HARLEY | ) |
| | ) |

### DECLARATION OF BEN S. BERNANKE

I, Ben S. Bernanke, declare as follows:

1.      I served as Chairman of the Board of Governors of the Federal Reserve System from February 1, 2006 until January 31, 2014.

2.      I have reviewed the documents attached to the November 26, 2014 subpoena issued to me in the above-captioned matter by Richard J. Harley.  Although each of the documents purport to be signed by me, I never signed these documents, had never seen them before receiving the subpoena, and am unfamiliar with the matters they purport to address.

3.      I have no documents in my possession, custody, or control concerning Richard J. Harley, Joseph Teo Hui Kiat, or Yohannes Riyadi.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 5 day of December, 2014.

_____
Ben S. Bernanke

EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)
(Cite as: 2006 WL 1147250 (E.D.Pa.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Stacey L. ROBINSON, Plaintiff
v.
CITY OF PHILADELPHIA, Defendant.

Civil Action No. 04-3948.
April 26, 2006.

Brian R. Mildenberg, Sherri J. Braunstein, Mildenberg & Stalbaum PC, Philadelphia, PA, for Plaintiff.

Stephen C. Miller, City of Philadelphia, Law Department, Philadelphia, PA, for Defendant.

### MEMORANDUM OPINION AND ORDER
RUFE, J.

*1 Presently before the Court is the Motion of Defendant City of Philadelphia (the "City") to Quash Plaintiff's Notice of Deposition to Honorable John Street. The Motion arises from Plaintiff's attempt to depose the Mayor of Philadelphia in connection with her claim that the City took certain illegal actions against her in retaliation for her dispute with a business owner at the Philadelphia International Airport and for her cooperation with a federal criminal investigation of corruption within city government.[FN1] For the reasons that follow, the Court grants the Motion.

> FN1. As Robinson points out, the instant Motion is incorrectly titled. Because Mayor Street is an agent of the City, the named Defendant in this action, the Motion instead should be titled as seeking a protective order pursuant to Federal Rule of Civil Procedure 26(c). The error is one of form rather than function, and, therefore, does not affect the Court's analysis of the Motion's substance.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Stacey Robinson ("Robinson") formerly worked at the Philadelphia International Airport (the "Airport"), which is owned by the City. In her role as Acting Airport Properties Manager, a temporary position, Robinson was responsible for ensuring that restaurants and concession stands at the Airport met various safety regulations. In spring of 2003, she became aware that the security roll-down grille at a restaurant owned by Eric J. Blatstein ("Blatstein") did not comply with the Airport's design specifications. Upon being informed of the grille's noncompliance, Blatstein sought permission to leave the improper grille in place. Robinson denied Blatstein's request and insisted that the grille be changed. She relayed her decision to deny Blatstein's request to her supervisors, Director of Aviation Charles Isdell ("Isdell"), Deputy Director of Aviation for Property Management and Business Development James Tyrell ("Tyrell"), and Airport Chief of Staff Jeff Shull ("Shull").

Beginning in fall of 2003, Robinson alleges she fell out of favor with Tyrell and Shull. In November 2003, she overheard one colleague tell another that "Jeff [Shull] said to get [Robinson] out of her position." [FN2]

> FN2. Compl. ¶ 22.

On January 28, 2004, two Federal Bureau of Investigation ("FBI") agents investigating corruption within city government informed Robinson that wiretaps had recorded Airport personnel discussing the need to "get her out of the way" because she "won't play." [FN3] The FBI agents also warned her to "be careful" because "someone's trying to get rid of you." [FN4]

> FN3. Compl. ¶ 25.

> FN4. *Id.*

In subsequent interviews with the FBI, Robin-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)
(Cite as: 2006 WL 1147250 (E.D.Pa.))

son learned that Blatstein had enlisted Ron White ("White"), a lawyer who did occasional contract work at the Airport and is now deceased, to deal with Robinson. According to White's wife, Dr. Aruby Odom-White, White was a political fundraiser for Mayor Street and the two had been friends for more than twenty years after meeting in law school. [FN5] However, beyond recalling that Mayor Street would call their home to talk with White, Dr. Odom-White did not know the extent of her husband's relationship with Mayor Street.[FN6] Blatstein knew about White's connection to Mayor Street, and Blatstein had contributed up to $36,000 to Mayor Street's political campaigns through White.[FN7] According to the FBI, Blatstein told White about Robinson's refusal to allow him to leave the improper roll-down grille in place and said, "Stacey's out of control." [FN8] Blatstein also communicated that Robinson's supervisors at the Airport could not alter her decision regarding the grille. White responded, "Don't worry about it, I'll take care of it." [FN9] Robinson learned from the FBI that White subsequently called the Director of the Airport and said to get rid of her because "she's a problem." [FN10]

FN5. Dr. Aruby Odom-White Dep. 37:12-19 (date not provided).

FN6. *Id.* 41: 12-16.

FN7. Eric Blatstein Re-Dep. 61: 12-20, Mar. 15, 2006.

FN8. Compl. ¶ 30.

FN9. *Id.*

FN10. Stacey Robinson Dep. 253:7-11, Jan. 12, 2006.

*2 Robinson alleges that as a result of her decision regarding the grille at Blatstein's restaurant and her cooperation with the FBI, the City retaliated against her by excluding her from consideration for a permanent appointment to the position of Airport Properties Manager, excluding her from meetings, and not assigning her work. On August 18, 2004, she brought this lawsuit asserting claims under 42 U.S.C. § 1983, wrongful discharge in violation of Pennsylvania public policy, and violation of the Pennsylvania whistleblower law.

On March 15, 2006, Robinson served a notice to depose Mayor Street, and on March 17, 2006, the City filed the Motion now under consideration.

II. DISCUSSION

The City seeks to prevent Robinson from deposing Mayor Street for two reasons: (1) Robinson has not sought leave to take an additional deposition beyond the ten permitted by the Federal Rules; and (2) the request to depose Mayor Street is unreasonable, unnecessary, and burdensome.

Federal Rule of Civil Procedure 30(a)(2) provides that "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in rule 26(b)(2), if ... a proposed deposition would result in more than ten depositions being taken under this rule." [FN11] The Court has previously granted Robinson leave to take two additional depositions over and above the procedural limit,[FN12] and Robinson has presently taken only eleven depositions. Therefore, the City's first argument is unavailing because Robinson has one deposition remaining.

FN11. Fed.R.Civ.P. 30(a)(2).

FN12. Order of Jan. 3, 2006 ¶ 2 [Doc. # 22].

The City's second reason, however, is more compelling. Courts have recognized that "high ranking government officials are generally entitled to limited immunity from being deposed" about certain matters.[FN13] "A party seeking the deposition of a high ranking government official must demonstrate that his testimony is likely to lead to the discovery of admissible evidence, is essential to that party's case and that this evidence is not available through any alternate source or less burden-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)
(Cite as: 2006 WL 1147250 (E.D.Pa.))

Page 3

some means." [FN14]

> FN13. *Hankins v. City of Philadelphia,* Civ. No. 95-1449, 1996 WL 524334, at *1 (E.D.Pa. Sept. 12, 1996) (extending such immunity to the former Mayor of Philadelphia). *See, e.g., United States v. Wal-Mart Stores,* Civ. No. PJM-01-CV-152, 2002 WL 562301, at *2 (D.Md. Mar. 29, 2002) (recognizing a limited immunity from deposition for both current and former high ranking officials); *Warzon v. Drew,* 155 F.R.D. 183, 185 (E.D.Wisc.1994) ("In general, high ranking government officials enjoy limited immunity from being deposed in matters about which they have no personal knowledge"), *aff'd,* 60 F.3d 1234 (7th Cir.1995).

> FN14. *Hankins,* 1996 WL 524334, at *1. *Accord Warzon,* 155 F.R .D. at 185.

The first requirement-that "testimony is *likely* to lead to the discovery of admissible evidence"-requires something greater than the normal Rule 26 relevancy standard.[FN15] "Mere knowledge or awareness of information that may be helpful if discovered is insufficient." [FN16] In *Hankins v. City of Philadelphia,* another court in this District denied plaintiffs' request to depose then-Mayor Edward G. Rendell because they had not "demonstrate[d] the type of need required to divert the Mayor from his official duties." [FN17] In *Hankins,* plaintiffs sought to depose the mayor about the City's approval of changes in eligibility requirements for the position of AIDS Program Director. The mayor had participated in the approval process only by virtue of his membership on the City's Administrative Board, which was responsible for ultimate approval of the change in eligibility requirements but had not engaged in any deliberations on the matter. The court held it unreasonable "to infer from the Mayor's *proforma* administrative approval of these changes that he was involved in or had personal knowledge of the deliberations underlying them." [FN18] While *Hankins* is not con-

trolling and is factually distinguishable from the present case-because it deals with the Mayor's involvement in an administrative decision rather than a more personal situation-it highlights the need for a party seeking to depose the Mayor to make an actual showing that the Mayor possesses personal knowledge relevant to the litigation.

> FN15. Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."

> FN16. *Wal-Mart Stores,* 2002 WL 562301, at *2. *Accord Marisol A. v. Giuliani,* Civ. No. 95-10533(RJW), 1998 WL 132810, at *3 (S.D.N .Y. Mar. 23, 1998) (stating the first prong of the standard for deposing high-ranking government officials is "strictly imposed").

> FN17. *Hankins,* 1996 WL 524334, at *2.

> FN18. *Id.*

*3 Here, no evidence directly or inferentially suggests that Mayor Street has personal knowledge of the Robinson incident or White's involvement in it. Robinson seeks to depose Mayor Street for the following reason:

[B]ecause Ron White is deceased, the Mayor is now the only person with direct knowledge of Ron White's relationship with the City. The Mayor's testimony with [sic] further make clear why Stacey Robinson's superiors deferred to the direction of Ron White when it came to shunning Stacey Robinson in the workplace. In fact, Plaintiff will attempt to show through the Mayor's testimony, that because of the power and influence the City and Mayor had delegated to Ron White, Stacey Robinson's co-workers and superiors were in fact influenced in their treatment of Stacey Robinson.[FN19]

> FN19. Pl.'s Resp. to Def.'s Mot. to Quash

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)
(Cite as: 2006 WL 1147250 (E.D.Pa.))

Page 4

at 5.

In other words, Robinson believes that White leveraged his relationship with Mayor Street to co-ordinate efforts to shun Robinson for her confrontation with Blatstein and cooperation with the FBI. While Robinson's theory is creative, the only established link between Mayor Street and this litigation is his vague personal and professional relationship with White. And although Dr. Odom-White testified that Mayor Street would call White occasionally during the course of their twenty-year friendship, she did not know what they discussed in those calls and did not say that they spoke to each other during the time of the events giving rise to this suit.

Moreover, there is no evidence in the present state of the record to establish that anyone asked White to contact Mayor Street regarding Robinson. There is also no evidence that establishes that Robinson's supervisors at the Airport otherwise reached out to Mayor Street or the Mayor's office regarding Robinson. During the course of its interviews with Robinson, the FBI never once mentioned the Mayor being involved or referenced in any conversation regarding Robinson. Thus, the connection between Mayor Street and White-friendship and political fundraising-is simply too tenuous to conclude that Mayor Street's testimony is likely to lead to admissible evidence in this case. FN20

> FN20. In a teleconference between counsel for both parties and the Court, counsel for Robinson suggested another reason his client sought to depose Mayor Street. Robinson's counsel said he wanted to ask whether Mayor Street somehow ordered or approved White's alleged effort to shun Robinson. That argument for deposing Mayor Street fails for the same reasons set forth above: there is no evidence suggesting Mayor Street has personal knowledge of this matter.

Robinson attempts to satisfy the first require-

ment to depose a high-ranking official by emphasizing her position under the second and third requirements. She points out that only Mayor Street can testify to his relationship with White, since White is now deceased. She also claims that his testimony is essential to her case because White needs to be connected to the City to establish her theory that the City orchestrated a campaign of retaliation against her. Combining these propositions, Robinson urges that only Mayor Street can supply the missing piece to complete the picture of the City's involvement in this matter. Perhaps, but the supposedly essential or unique aspects of Mayor Street's testimony cannot overcome the absence of actual likelihood that his testimony will lead to admissible evidence. Robinson's unfounded suspicion about what Mayor Street knows or will say is no substitute for reasonable evidence and inference. To conclude otherwise would allow Robinson, or any civil litigant, to depose any high ranking official based on nothing more than supposition.

*4 Furthermore, to the extent Robinson seeks generally to substantiate White's influence at the Airport, other individuals could testify to that influence. For example, other Airport employees or people within the Mayor's office who work with matters at the Airport, are likely to know White's role at the Airport or be aware of other occasions where White leveraged his ties to Mayor Street to make things happen. Therefore, while only Mayor Street can flesh out the nature of their personal and political relationship, it is not true that only Mayor Street can provide testimony about how White went about leveraging his relationship with the Mayor to help Blatstein deal with Robinson.

In conclusion, consistent with the "public policy concern that high ranking government officers be permitted to perform their official tasks without disruption or diversion," FN21 the Court grants the City's Motion.

> FN21. *Hankins,* 1996 WL 524334, at * 1.

An appropriate Order is attached.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)
(Cite as: 2006 WL 1147250 (E.D.Pa.))

### ORDER

AND NOW, this 26th day of April 2006, upon consideration of Defendants' Motion to Quash Plaintiff's Notice of Deposition to Honorable John Street [Doc. # 36], Plaintiff's Response thereto [Doc. # 41], and Defendant's Reply [Doc. # 44], and after brief argument via teleconference, it is hereby ORDERED that Defendants' Motion is GRANTED.

It is so **ORDERED.**

E.D.Pa.,2006.
Robinson v. City of Philadelphia
Not Reported in F.Supp.2d, 2006 WL 1147250 (E.D.Pa.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp., 1996 WL 524334 (E.D.Pa.)
(Cite as: 1996 WL 524334 (E.D.Pa.))

▷
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Cecil HANKINS
v.
CITY OF PHILADELPHIA, et al.

Civ.A. No. 95-1449.
Sept. 12, 1996.

Richard J. Silverberg, Rebecca J. Houlding,
Richard J. Silverberg and Associates, Philadelphia,
PA, for Cecil Hankins.

Raymond A. Kresge, Pepper, Hamilton & Scheetz,
Philadelphia, PA, E. Jane Hix, Asst. City Solicitor,
Philadelphia, PA, Howard Lebofsky, Deputy City
Solicitor, Philadelphia, PA, for City of Phil- adelphia.

Wayne Wynn, Willig, Williams & Davidson, Phil-
adelphia, PA, for American Federation Of State,
County and Municipal Employees and American
Federation Of State, County and Municipal Em-
ployees District Council 47, Local 2187.

*MEMORANDUM ORDER*
WALDMAN, District Judge.
**\*1** Presently before the court is plaintiff's Mo-
tion to Compel the Deposition of Mayor Edward G.
Rendell.

Plaintiff served a Notice of Deposition of May-
or Rendell upon defendant City of Philadelphia
which plaintiff asserts was "obligated to produce
the Mayor for his deposition or move for a protect-
ive order pursuant to Rule 26(c)." The Mayor did
not appear for deposition at the time and place re-
quested and no motion for a protective order had
been filed at that time.

Plaintiff states that the Mayor "knew or should
have known" that changes to the eligibility require-

ments for the AIDS Program Director position were
made for an "illegitimate purpose." Plaintiff also
states, "upon information and belief" that the May-
or has information regarding "political reasons" for
having Mr. Scott rather than plaintiff fill the posi-
tion of AIDS Program Director. Plaintiff finally
states that the Mayor "may" have information re-
garding racism and its effect on staffing decisions
within the City Health Department.

Even accepting that the Mayor is an officer of a
party for whom a subpoena is not required and for
whom a notice of deposition is sufficient, *see*
Wright, Miller & Marcus *Federal Practice & Pro-
cedure: Civil 2d* §§ 2107, 2112 (1994); *Riff v. Po-
lice Chief Elmer Clawges,* 158 F.R.D. 357, 358
(E.D.Pa. 1994); *Trans Pacific Ins. Co. v. Trans-
Pacific Ins. Co.,* 136 F.R.D. 385, 392 (E.D.Pa.
1991); *Community Federal Savings and Loan Ass'n.
v. Federal Home Loan Bank Board,* 96 F.R.D. 619,
621 (D.D.C. 1983), plaintiff failed to seek or obtain
leave to depose the Mayor pursuant to Fed. R. Civ.
P. 30 (a)(2)(A). Plaintiff had already conducted el-
even depositions and requested defendants to
schedule ten others not including the Mayor's.

The City further contends that as "a busy pub-
lic official" without any knowledge "pertinent to
material issues in the lawsuit," the Mayor should be
exempt from deposition. High ranking government
officials are generally entitled to limited immunity
from being deposed concerning matters about
which they have no unique personal knowledge.
*Warzon v. Drew,* 155 F.R.D. 183, 185 (E.D.Wis.
1994), *aff'd,* 60 F.3d 1234 (7th Cir. 1995); *Com-
munity Federal,* 96 F.R.D. at 621. *See also In re U.
S.,* 985 F.2d 510, 512-513 (11th Cir. 1993), *cert.
denied sub nom Faloon v. U.S.,* 510 U.S. 989
(1993); *Sweeney v. Bond,* 669 F.2d 542, 546 (8th
Cir. 1982), *cert. denied sub nom Schenberg v.
Bond,* 459 U.S. 878 (1982); *Kyle Eng'g Co. v.
Kleppe,* 600 F.2d 226, 231 (9th Cir. 1979). Such
immunity is premised on a public policy concern
that high ranking government officers be permitted

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 524334 (E.D.Pa.)
(Cite as: 1996 WL 524334 (E.D.Pa.))

Page 2

to perform their official tasks without disruption or diversion. *Warzon,* 155 F.R.D. at 185; *Community Federal,* F.R.D. at 621. A party seeking the deposition of a high ranking government official must demonstrate that his testimony is likely to lead to the discovery of admissible evidence, is essential to that party's case and that this evidence is not available through any alternative source or less burdensome means. *Id.*

*2 The only meaningful showing plaintiff makes is that Mayor Rendell was one of three members of the City's Administrative Board which ultimately approved proposed changes to the job requirements for the AIDS Program Director position. That the Mayor signed off on changes to job classifications approved and submitted by the Civil Service Commission, including those of AIDS Program Director, does not demonstrate that he has personal knowledge of the particular reasons why such changes were proposed or why staffing decisions of various agencies were made.[FN1]

> FN1. The Administrative Board action consists of a one sentence approval followed by the signatures of the Mayor and other two Board members. There is no showing of any presentation to or deliberation by the Board regarding the classification for AIDS Program Director or any other position.

The list approved by the Administrative Board on April 22, 1993 on which the AIDS Program Director position appeared had classification changes for 51 positions, including a physical therapy supervisor, a park guide, a cement finisher, equipment operators, a tow truck driver and a custodial worker. The classification changes were approved by the Civil Service Commission at a public meeting which had been generally advertised. It is not reasonable to infer from the Mayor's *pro forma* administrative approval of these changes that he was involved in or had personal knowledge about the deliberations underlying them.[FN2]

> FN2. Unlike Governor Thompson in *Warzon,* the Mayor did not submit an affidavit stating that he has no relevant information about the facts or issues involved in the lawsuit. There is, however, no requirement that such an affidavit be produced, particularly where the party seeking a deposition relies on supposition. The Deputy City Solicitor represents that "the Mayor has absolutely no involvement in this case and has no relevant knowledge regarding plaintiff's cause of action." It would be quite extraordinary if he made such a representation without appropriate advice from the Mayor.

Moreover, there is no showing that the Mayor's testimony is essential, that any information he may have about the Civil Service classification is not available from other sources, including Barry Savitz and other Health Department officials, or that there is no less burdensome means for obtaining any such information. For example, a few narrowly tailored interrogatories could elicit any such information or establish that the Mayor has more without subjecting him to a deposition away from his office during working hours and "continuing day to day." *See Community Federal,* 96 F.R.D. at 621-232 (noting failure of plaintiff to show information it hoped to elicit from defendant agency's chairman was not ascertainable through interrogatories).

Plaintiff's motion will be denied for failure to obtain leave to conduct the deposition he seeks to compel and to demonstrate the type of need required to divert the Mayor from his official duties. The request of the City that its expenses in responding to plaintiff's motion be reimbursed because his intent was to "harass and burden the City" will be denied.

ACCORDINGLY, this 11th day of September, 1996, upon consideration of plaintiff's Motion to Compel and defendant City of Philadelphia's response thereto and its Request for Reimbursement,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 524334 (E.D.Pa.)
**(Cite as: 1996 WL 524334 (E.D.Pa.))**


IT IS HEREBY ORDERED that plaintiff's Motion
is DENIED and defendant's Request for Reimburse-
ment for Costs and Fees is DENIED.

E.D.Pa.,1996.
Hankins v. City of Philadelphia
Not Reported in F.Supp., 1996 WL 524334 (E.D.Pa.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.