IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:CR-12-00224 |
| Plaintiff | |
| vs. | |
| RICHARD J. HARLEY, | Honorable A. Richard Caputo |
| Defendant | |

### BRIEF OF DEFENDANT, RICHARD J. HARLEY, IN SUPPORT OF HIS MOTION FOR JUDGMENT OF ACQUITTAL AND/OR A NEW TRIAL

_____

## PROCEDURAL HISTORY

A Grand Jury sitting in the Middle District of Pennsylvania reported a twenty-three (23) count Indictment against Richard Harley ("Harley") on August 30, 2012.

Harley entered a plea of guilty on October 16, 2012 and was granted pre-trial release on a One Hundred Thousand Dollar ($100,000.00) unsecured bond.

On September 16, 2013, Harley filed a Pre-Trial Motion to Dismiss, a Motion to Suppress Evidence, and a Motion for a Bill of Particulars.  By Orders dated January 27, 2014 and April 10, 2014, the Court denied all three

1

(3) Motions.

The case was tried before the Honorable A. Richard Caputo and a jury on December 3, 4, 5, 8, 9, 10, 11, 12, and 15, 2014.

On December 15, 2014 Harley made a Motion for Judgment of Acquittal on the Record.  The Motion was denied by the Court.

On December 16, 2014, the jury entered a guilty verdict on all twenty-three (23) counts.

On December 30, 2014, Harley filed a Motion for Judgment of Acquittal and/or a New Trial.  Harley files this Brief in support of said motions.

## STATEMENT OF FACTS

The Indictment against Harley contained twenty-three (23) counts including wire fraud, bankruptcy fraud, and false statements in connection with bankruptcy and bank fraud.  The basis for the charges were three (3) alleged schemes to defraud in which Harley allegedly participated.

The first alleged scheme to defraud set forth in the Indictment involved the ownership of oil in Texas.  The Indictment alleged that Harley defrauded individuals and financial institutions by claiming that his company, RJH & Company ("RJH"), owned over one million dollars in oil

located in Texas.  The Indictment further alleged that Harley solicited loans and investments from individuals and financial institutions based on the claim of owning the Texas oil.

The second alleged scheme to defraud set forth in the Indictment involved the ownership of bank instruments.  The Indictment charged Harley falsely claimed that RJH owned Federal Reserve Bank instruments totaling more than one hundred billion dollars and that he solicited financial and lending institutions to negotiate, deposit, manage and loan money against those funds.

The third alleged scheme to defraud set forth in the Indictment involved bankruptcy proceedings filed by Harley and RJH.  The Indictment alleged that Harley attempted to defraud creditors by filing false and fraudulent bankruptcy petitions in the United State Bankruptcy Court.

Counts 1-5 of the Indictment involve Marshal Silverstein ("Silverstein").  Silverstein is an experienced businessman with two (2) college degrees.  (Tr. December 5, 2014 at 146-147) (Tr. December 8, 2014 at 11).  Henry Cohen ("Cohen") recommended Harley to Silverstein. Silverstein relied on Cohen in doing an independent investigation of Harley.

(Tr. December 8, 2014 at 153; December 12, 2014 at 14).  He did business

with Harley for three (3) years.  (Tr. December 5, 2014 at 157).

Silverstein's investments with Harley involve the Texas oil assets.  He made

all transfers to Harley voluntarily with the understanding that there was

business risk involved.  (Tr. December 8, 2014 at 15-17).  He continued to

make transfers over the three (3) year period even though he was not

receiving his promised return.  (Tr. December 8, 2014 at 18-19).  The

specific charges contained in Counts 1-5 relate to five (5) wire transfers

made by Silverstein to Harley's company's account with Merrill Lynch.

The transfers total $63,500.00 and were made between July 24, 2008 and

March 24, 2009.  (Indictment document #1).

Count 6 involved Maury Schuford ("Schuford").  Schuford is a retired

heavy truck driver with the L.A. School System.  (Tr. December 8, 2014 at

77).  He was seeking investment opportunities and was recommended to

Harley by a friend.  (Tr. December 8, 2014 at 78-79).  He invested with

Harley with the understanding that he would not get any return if there was

no drilling on the oil property or if no oil was produced on the property.  (Tr.

December 8, 2014 at 92-93).  The specifics of Count 6 are a wire transfer

from Schuford's Hughes Aircraft Credit Union account to Harley's

company's account at Merrill Lynch.  The transfer was in the amount of $10,000.00 and was made on December 20, 2007.  (Indictment document #1).

Counts 7-10 involve Malcolm Cassell ("Cassell").  Cassell was a CEO of a technology company in California.  (Tr. December 8, 2014 at 91-95). He was introduced to Harley by a friend.  (Tr. December 8, 2014 at 96-97). He made an advance payment of $2,000.00 just to meet with Harley.  This payment was not the subject of any charge against Harley.  (Tr. December 8, 2014 at 98, 159).  Cassell invested a total of $8,000.00 in Harley's oil investments, but declined to participate in the investing of the Federal Reserve checks.  (Tr. December 8, 2014 at 106-107).  The specifics of the Cassell charges are wire transfers from Cassell's Citi Bank account to Harley's company's Merrill Lynch account on December 16, 2008 in the amount of $3,000.00 and December 22, 2008 in the amount of $5,000.00.  In addition, the wire fraud charges concerning Cassell also relate to emails from Harley's company to Cassell dated April 28, 2009 and May 16, 2009. (Indictment document #1).

Count 11 involved Irene Randall ("Randall").  Randall was involved

5

in the commercial financing business.  Specifically, she sought financing

projects for lenders.  (Tr. December 9, 2014 at 110).  The wire fraud charge

in Count 11 relates to a corporate profile emailed by Harley to Randall on

May 4, 2010. (Indictment document #1).  The corporate profile did not

reflect any judgments against RJH.  (Tr. December 9, 2014 at 111-114).

Randall declined to invest with Harley.  (Tr. December 9, 2014 at 114).

Count 12 involved Merrill Lynch.  Harley emailed two (2)

$500,000,000.00 Federal Reserve checks and documentation to Merrill

Lynch on April 20, 2009.  Merrill Lynch representative Andrew

Heckenberger ("Heckenberger") testified that Harley had orally requested

that Merrill Lynch deposit the checks.  He did not make that request in

writing and did not submit an endorsement, a deposit slip, or an original of

the checks.  Merrill Lynch did not accept the checks for deposit.[1]

Count 13 involved State Street Bank.  Harley emailed a corporate

profile together with safe keeping receipts and the two (2) Federal Reserve

checks to State Street Bank on April 3, 2012.  (Indictment document #1).

---

[1] The testimony of Mr. Heckenberger occurred on December 4, 2014.  The transcript of proceedings provided to defense counsel for that date did not have numbered pages.  Therefore, we are unable to submit a page number for Heckenberger or any other witness who testified on that date.

(Tr. December 5, 2014, pages 13-14).  On April 27, 2012, State Street Bank informed Harley that it would not accept the deposit. (Tr. December 5, 2014, at pages 18-19).

Count 14 involved LPL Financial.  Harley emailed the two (2) Federal Reserve checks to LPL Financial on April 28, 2009.  (Indictment document #1).  LPL Financial declined the deposit.

Count 15 involved four (4) emails from Harley to the New York Federal Reserve Bank dated April 18, 2011.  The emails contained images of two (2) Federal Reserve checks, supporting documentation, and cash payment demand for $1 billion.  (Indictment document #1).  The Federal Reserve Bank of New York denied Harley's request for cash payment.

Counts 16 and 17 of the Indictment charged Harley with bankruptcy fraud.  Specifically, in Count 16, United States charged that Harley filed a Chapter 11 Petition on November 22, 2010 in the name of RJH & Company, Inc. with the intent to defraud creditors.  In Count 17, the Government charged that Harley filed a Chapter 11 bankruptcy in the name of RJH & Company on March 24, 2011 with the intent to defraud creditors. (Indictment document #1).

7

Counts 18-22 charged Harley with making false statements in relation to the bankruptcies he filed on behalf of this company, and in a bankruptcy proceeding he filed on his own behalf on May 29, 2012. (Indictment document #1).

In Count 23, the Government charged Harley with bank fraud occurring between April 2009 and April 2012.  The charge included the allegation that Harley attempted to defraud the Federal Reserve Bank of New York by attempting to negotiate and deposit the two (2) $500,000,000.00 Federal Reserve checks.  (Indictment document #1).

<u>ARGUMENT</u>
<u>Standard of Review</u>

The legal standard for consideration of a Motion for Acquittal is that a conviction would be upheld if, after viewing the evidence in the light most favorable to the prosecution, the reviewing court finds that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 99 S.Ct. 2781, 2789 (1979).  The Court affords deference to a jury's findings and draws all reasonable inferences in favor of the jury's verdict.  *United States v. Riley*, 621 F.3d

312, 329 (3rd Cir. 2010).

The legal standard for consideration of a motion for a new trial is that the Court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. 33.  The ultimate test on a motion to grant a new trial is whether letting a guilty verdict stand would be a manifest injustice.  _United States v. Ferguson_ 246 F.3d 129, 134 (2nd Cir. 2001).

### The Court Should Grant Harley's Motion for Judgment of Acquittal and Enter a Verdict of Not Guilty on the Wire Fraud Charges Contained in Counts 1-15 of the Indictment

Harley was found guilty of Counts 1-15 of the Indictment.  These Counts charged him of wire fraud in violation of 18 U.S.C. 1343 which provides in part:

> "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

To prove wire fraud, the Government must prove beyond a reasonable doubt: (1) Defendant knowingly and willingly participated in a scheme or

9

artifice to defraud with the specific intent to defraud; and (2) the use of the mail or interstate wire communications in furtherance of the scheme.  _United States v. Sawyer_, 85 F.3d 713, 722 (1st Cir. 1996).  _United States v. Loney_, 959 F.2d 1332, 1337-38 (5th Cir. 1992); _Philadelphia Reserve Supply Company v. Nowalk and Associates, Inc._, 846 F. Supp. 1456, 1470-71 (E.D. PA. 1994).

The term "knowingly" requires the Government to prove that a criminal defendant had knowledge of the facts that constitute the facts. _United States v. Starnes_, 583 F.3d 196, 210 (3rd Cir. 2009).  When used in conjunction with "knowingly", the term "willfully" requires the Government to prove that the defendant acted not merely voluntarily, but that his conduct was unlawful and that he intended to do something the law forbids.  _Id_.

A scheme to defraud is defined to include any plan, pattern, or course of action including false and fraudulent pretenses and misrepresentations intended to deceive others in order to obtain something of value.  _United States v. Goldblatt_, 813 F.2d 619, 624 (3rd Cir. 1987).  A scheme to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of

ordinary prudence and comprehension.  *United States v. Pearlstein*, 576 F.2d 531, 535 (3rd Cir. 1978).  A scheme to defraud requires that a defendant contemplate some harm to the victim.  *United States v. Starr*, 816 F.2d 94, 98 (2nd Cir. 1987).

Fraud is measured in a particular case by determining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community.  *Id*.  Essential to a conviction under a scheme to defraud is a showing of fraudulent intent, i.e. an intent to deceive and an intent to cause actual harm.  *United States v. Stavroulakis*, 952 F.2d 686, 694 (2nd Cir. 1992).  It is not necessary for the Government to prove that the intended victim was actually defrauded or that the Defendant personally benefited from the scheme.  *United States v. Goldblatt,* 813 F.2d at 624-625.

Harley submits that the evidence presented by the United States at trial is wholly inconsistent with a scheme to defraud.  To the contrary, the Government did not meet its burden to establish that Harley knew that the Texas oil investment or the Federal Reserve checks were fraudulent or that he intended to make any misrepresentation to the companies and individuals

to whom he presented these investment opportunities.

Harley did not testify at trial.  The United States did not present, through other witnesses, any admissions made by Harley which would indicate that he knew the investment opportunities were fraudulent and intended to defraud those to whom he presented them.  Indeed, the only evidence of what Harley truly believed about these investments came from the testimony of Edward Siegel of State Street Bank and Richard Jones of the Federal Reserve Bank.  Both of these individuals who spoke and corresponded with Harley about these matters, testified that Harley believed the Texas oil and the Federal Reserve checks were legitimate business opportunities.  (Tr. December 5, 2014, at page 20) (Siegel); (Tr. December 3, 2014, at pages 49-57; Tr. December 4, 2014, cross examination of Jones) (Jones)[2].

As indicated above, the crime of wire fraud requires the Government to prove that the defendant acted knowingly, willfully, and with the intent to defraud others.  The record, however, contains no evidence that Harley knew

---

[2] The testimony of Mr. Siegel and Mr. Jones occurred on December 4, 2014.  The transcript of proceedings provided to defense counsel for that date did not have numbered pages.  Therefore, we are unable to submit a page number for Siegel and Jones or any other witness who testified on that date.

the investment opportunities were false or that he willfully and specifically

intended to defraud others.

Harley requests, therefore, that the Court grant the Motion for the

Judgment of Acquittal for wire fraud charges contained in Counts 1-15 of

the Indictment.

## The Court Should Grant Harley's Motion for Judgment of Acquittal and Enter a Verdict of Not Guilty on the Bank Fraud Charges Contained in Count 23 of the Indictment

The jury also found Harley guilty of one count of bank fraud in

violation of 18 U.S.C. 1344 which provides in pertinent part as follows:

> "Whoever knowingly executes, or attempts to execute, a scheme or artifice - -
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the  moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
>  shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

As is clear from the statutory language, the bank fraud statute also

requires the Government to prove that a defendant knowingly engaged in a

scheme to defraud.  The scheme to defraud alleged in Count 23 of the

Indictment involves the two (2) $500,000,000.00 Federal Reserve checks.

As set forth above, the evidence presented by the Government at trial does

not establish that Harley knew these checks to be fraudulent.  Rather, the

only evidence presented on the issue was that he believed they were

legitimate.  Thus, Harley submits that the evidence was insufficient to

sustain his conviction on the bank fraud charge and that the Court should

enter a Judgment of Acquittal on that charge.

### The Court Should Grant Harley's Motion for Judgment of Acquittal and Enter a Verdict of Not Guilty on the Bankruptcy Fraud Charges Contained in Counts 16 and 17 of the Indictment

Harley was also convicted of two (2) counts of bankruptcy fraud

prohibited by 18 U.S.C. 157, which provides in pertinent part as follows:

> "A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so - -
>
> (1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title;
>
> (2) files a document in a proceeding under title 11; or
>
> (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relations to a proceeding falsely asserted to be pending under such title, shall

be fined under this title, imprisoned not more than 5 years, or both.

The United States contends that the evidence of Harley's bankruptcy filings on behalf of his company on November 22, 2010 and March 24, 2011 constitute a scheme to defraud his creditors.  Harley submits that the evidence was insufficient to establish these charges.

Article 1, Section 8, Clause 4 of the United States Constitution authorizes the Congress to establish uniform laws on the subject of bankruptcies throughout the United States.  Congress has availed itself of this opportunity for the following reasons: (a) prevent creditors from taking unfair advantage of a debtor; (b) suspend the normal operation of rights and obligations between the debtor and his creditors; (c) relieve the debtor from the burden of indebtedness; (d) provide him with a fresh start; and (e) equitably distribute the debtor's assets among his creditors.  8A. C.J.S. Bankruptcy §2 at page 18 (West 1988 ed.).

The record in this case is replete with evidence that Harley's company was in substantial debt and was a legitimate candidate for bankruptcy. Given that fact, the fact that the right to file a bankruptcy is confirmed both in the United States Constitution and federal legislation, and the fact that the

15

record contains absolutely no evidence of any intent by Harley to file a

fraudulent petition, Harley submits that the evidence was insufficient to

sustain his conviction on these counts.

## The Court Should Grant Harley's Motion for Judgment of Acquittal and Enter a Verdict of Not Guilty on the False Statement Charges Contained in Counts 18-22 of the Indictment

Harley was also convicted of five (5) counts of making false

statements in a bankruptcy petition in violation of 18 U.S.C. 152(3), which

provides in pertinent part as follows:

"A person who –

(3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11;

shall be fined under this title, imprisoned not more than 5 years, or both."

The five (5) essential elements of this offense are: (1) the existence of

bankruptcy proceedings; (2) a statement made therein or in relation thereto;

(3) the statement was as to a material fact; (4) the statement was false; and

(5) the statement was knowingly and fraudulently false.  _Metheany v. United

States_, 390 F.2d 559, 561 (9th Cir. 1968).

The alleged false statements which formed the basis of these charges

are as follows: (1) Harley submitted a schedule of assets of RJH stating

RJH had assets totaling $765 million, including approximately 10 million

barrels of proven reserves valued at $700 million, when in truth and in fact,

as Harley well knew, such statements were false; (2) Harley submitted a list

of creditors which omitted Victim #1, the SEC, and the United States when,

in truth and in fact, as Harley well knew, Victim #1, the SEC, and the

United States were creditors; (3) Harley submitted a statement of financial

affairs which falsely stated that Harley had no businesses in which he was

an officer, director, partner, or managing executive of a corporation, partner

in a partnership, sole proprietor, or was self-employed in a trade,

profession, or other activity, either full or part-time, within six years

immediately preceding the commencement of the bankruptcy filing, when,

in truth and in fact, as Harley well knew, he was the Chief Executive

Officer of RJH during that time period; and (4) Harley failed to list all

personal property owned by him and his wife, including art objects.

Obviously, there were some mistakes made in the information

provided on the bankruptcy petitions.  The record, however, contains no

evidence that the mistakes were knowingly or fraudulently made.  Harley

submits, therefore, that the evidence is also insufficient on these counts to

17

sustain the jury's verdict.

### The Court Should Grant a New Trial to Harley due to the Presentation before the Jury of Evidence of his Prior Involvement with the Criminal Justice System

At one point during the trial, there was a document presented before the jury and admitted into evidence that referred to a previous criminal proceeding involving Mr. Harley.  Neither defense counsel, the prosecution, nor the Court noticed the matter at the time it was presented to the jury. Subsequently, before trial began the next day on December 10, 2014, defense counsel brought the matter to the attention of the Court.  (Tr. December 10, 2014, pages 4, 47-48).  The document was appropriately redacted before it was again given to the jury and Defendant, through defense counsel, declined to request a curative instruction.  *Id*; (Tr. December 15, page 32).

Harley did not take the stand at trial.  Federal Rule of Evidence 404 does not provide any basis to support the admission of the evidence erroneously brought before the jury.  The crimes charged in this case all contain an element of fraudulent intent on Harley's behalf.  In light of the above, Harley submits that the evidence of his prior involvement in the Criminal Justice System was so prejudicial in the context of this case that

the Court should award a new trial in the interest of justice.  *United States v. Rinaldi*, 301 F.2d 576, 578 (2nd Cir. 1962).

### The Court Should Award a New Trial Due to the Inconsistent Evidence Provided by the United States before the Grand Jury and at Trial Concerning the Location of the Original Oil Promissory Note

At the conclusion of the trial on December 15, 2014, defense counsel pointed out to the Court that there was substantial inconsistency in the testimony presented at trial concerning a very important issue concerning the location of the original oil note.  (Tr. December 15, 2015, at pages 13-17).  The Court rejected defense counsel's argument on the grounds that any harm to the defendant was speculative and that the matters alleged were not part of the record.  *Id.*

Harley submits that the discovery produced in this case which includes Grand Jury and other statements made by the witnesses on this relevant issue reflect a substantial and significant inconsistency on the location of the original oil note.  Harley submits, therefore, that the Court should hold a hearing on this issue to determine whether there has been a miscarriage of justice with respect to this matter.

<u>CONCLUSION</u>

On the basis of the foregoing, Harley requests that the Court set aside the verdict of the jury and enter an acquittal on all charges.  In the alternative, Harley requests that the Court, in the interest of justice, grant Harley a new trial.

Respectfully submitted,

<u>/s/ Joseph A. O'Brien</u>
Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103
Oliver, Price & Rhodes
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA 18411
TEL: (570) 585-1200
FAX: (570) 585-5100
Email: jaob@oprlaw.com

## CERTIFICATE OF SERVICE

I, JOSEPH A. O'BRIEN, ESQUIRE, of Oliver, Price & Rhodes, hereby certify that on the 17th day of June, 2015, I served a true and correct copy of BRIEF OF DEFENDANT, RICHARD J. HARLEY, IN SUPPORT OF HIS MOTION FOR JUDGMENT OF ACQUITTAL AND/OR A NEW TRIAL, via the Court's ECF system on all counsel of record as authorized under Federal Rule 5(b)(2)(E) and local rule 5.6 of the United States District Court for the Middle District of Pennsylvania. I further certify that all counsel of record in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

/s/ Joseph A. O'Brien
Joseph A. O'Brien, Esquire
Attorney I.D. No.: 22103
Oliver, Price & Rhodes
1212 South Abington Road
Clarks Summit, PA  18411
Tel: (570) 585-1200
Fax: (570) 585-5100
Email: jaob@oprlaw.com