PJS:BB:nl

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIM. NO. 3:CR-12-00224 |
| | ) | |
| v. | ) | (CAPUTO, J.) |
| | ) | |
| RICHARD J. HARLEY, | ) | |
| | ) | |
| Defendant. | ) | (ELECTRONICALLY FILED) |

## GOVERNMENT'S SENTENCING MEMORANDUM

AND NOW, the United States of America, by Bruce Brandler, Assistant U.S. Attorney for the Middle District of Pennsylvania, hereby submits this sentencing memorandum as an aid to the Court in fashioning an appropriate sentence.

## I.    PROCEDURAL HISTORY.

On August 30, 2012, the defendant, Richard J. Harley ("Harley"), was indicted by the federal grand jury and charged in a twenty-three count Indictment.  Counts 1 through 15 charged Harley with wire fraud, in violation of 18 U.S.C. § 1343.  Counts 16 and 17 charged Harley with bankruptcy fraud, in violation of 18 U.S.C. § 157(1). Counts 18 through 22 charged Harley with making false statements in

bankruptcy filings, in violation of 18 U.S.C. § 152(3).  Count twenty-three charged Harley with bank fraud, in violation of 18 U.S.C. § 1344.

The Indictment alleged that Harley executed three related schemes to defraud multiple victims of money and property between 1999 and 2012.  The first scheme, described as "the Oil Scheme," relates to Harley's solicitation of investments and loans based on his claim to own $1 billion worth of oil in Texas.  Indictment, ¶ 5-12.  The second scheme, described as "the Treasury Check Scheme," relates to Harley's claim to owning negotiable bank instruments worth more than $700 billion and his attempt to get the Federal Reserve Bank of New York to pay him $1 billion and to get financial institutions to lend him money using the bank instruments as collateral.  Indictment, ¶ 13-17.  The third scheme, described as "the Bankruptcy Fraud Scheme," relates to Harley's attempt to defraud his creditors and the bankruptcy court by making false statements in his three bankruptcy filings between 2010 and 2012.  Indictment, ¶ 18-22.

Harley was arraigned on October 16, 2012, pled not guilty to the charges, and was released on a $100,000 unsecured bond.

Trial commenced on December 8, 2014, and proceeded until December 16, 2014 when the jury returned guilty verdicts on all counts. DDE 164.  Harley was continued on bail pending sentencing.

On December 30, 2014, Harley filed a motion for a judgment of acquittal and/or new trial.  DDE 168.  The brief in support of the motion was filed on June 17, 2015.  DDE 200.

The government responded to Harley's motion on July 1, 2015. DDE 202.  That motion is still pending as of the date of this filing.

## II.  <u>THE PRESENTENCE REPORT</u>.

The Presentence Report ("PSR") was issued on February 9, 2015 and revised on March 12, 2015.  DDE 186.  A second addendum was issued on April 8, 2015 which contained victim-impact statements submitted by Mary Ann Alexander and Marshall Silverstein.

The offense conduct recited in the PSR at paragraphs four through twenty-one is accurate, and no objections have been made by Harley to those facts.  Thus, the Court may rely upon them for sentencing purposes.

The guideline calculation is as follows:

Base offense level . . . . . . . . . . . . . . . . . . . . . . . 7

Intended loss . . . . . . . . . . . . . . . . . . . . . . . . . 30

Fraud during a bankruptcy . . . . . . . . . . . .  2

Sophisticated means . . . . . . . . . . . . . . . . . .  2

Abuse of trust . . . . . . . . . . . . . . . . . . . . . . . .  2

Total offense level . . . . . . . . . . . . . . . . . . . . . 43

Criminal history category III

Guideline range = Life

The defendant filed three objections to the PSR on February 26, 2015 which are pending.  First, he objected to the thirty-level increase pursuant to U.S.S.G. 2B1.1(b)(1)(P), for an intended loss in excess of $400 million.[1]  Second, he objected to a two-level increase pursuant to § 2B1.1(b)(9)(B) for making a misrepresentation or other fraudulent action during a bankruptcy proceeding.  Third, he objected to

---

[1]   The Sentencing Guidelines were amended as of November 1, 2015, and now impose a 30-level increase if the loss, or intended loss, was in excess of $550 million.  See U.S.S.G. § 2B1.1(b)(1)(P) (November 1, 2015 ed.).  In this case, the amendment is immaterial because the intended loss was in excess of $1 billion.  See PSR, ¶ 30.

paragraph 35 of the PSR.  Paragraph 35, however, did not result in any increase in the defendant's guideline calculation.  <u>See</u> PSR, ¶ 35.  Thus, that objection has no effect on the guideline calculation.

## III.   <u>ARGUMENT</u>.

The Court follows a familiar three-step process when imposing sentence.  First, it must calculate the advisory guideline range.  Second, it must rule on any departures.  Third, the Court considers the factors set forth in 18 U.S.C. § 3553(a) and imposes sentence.  United States v. Tomko, 562 F.3d 558 (3d Cir. 2009).

### A.   <u>Calculation of the Guidelines Range</u>.

The base offense level is seven if the defendant was convicted of an offense referenced in § 2B1.1, and one that carries a statutory maximum term of imprisonment of twenty years or more.  U.S.G. § 2B1.1(a)(1).  Harley was convicted of multiple counts of mail, wire, and bank fraud, which carry twenty and thirty-year maximum terms, so the base offense level is seven.

If the loss exceeds $5,000, the offense level is increased pursuant to the table in U.S.S.G. § 2B1.1(b)(1). [2]  Pursuant to Application Note 3(A), loss is the greater of actual loss or intended loss.

The actual loss in this case is $318,800.  Testimony at trial established that the following individuals were deceived into giving Harley the following amounts of money based on various false representations, including his purported ownership of a promissory note worth $200 million, oil reserves worth in excess of $1 billion, and negotiable bank instruments worth in excess of $1 billion.  PSR, ¶ 8-12.

| | |
|---|---|
| Marshall Silverstein . . . . . . . . . | $259,500 |
| Maurice Schufford . . . . . . . . . . | 10,000 |
| Malcolm Casselle . . . . . . . . . . . | 10,000 |
| Peter Bunche . . . . . . . . . . . . . . | 21,000 |
| Peter Blau . . . . . . . . . . . . . . . | 5,800 |
| Bertrand Falls . . . . . . . . . . . . . | 5,000 |
| Kathleen Kelly . . . . . . . . . . . . | 5,000 |

---

[2]  The loss table was amended as of November 1, 2015. References to the loss table will refer to the amended guidelines now in effect.  See U.S.S.G. § 1B1.11(a).

Mary Ann Alexander . . . . . . . . .  <u>  2,500</u>

$318,800

<u>See</u> PSR, ¶ 12, 22.[3]

The intended loss, however, is substantially higher.  First, with respect to the bankruptcy fraud counts relating to Harley's 2010 and 2011 petitions (Counts 16-19) (PSR, ¶ 17-18), Harley intended to defraud Mr. Silverstein of $2 million, which was the amount Harley listed on his bankruptcy petitions as owed to Mr. Silverstein.  <u>See United States v. Longwell, 410 F. App'x 684, 691 (4th Cir. 2011)</u> (A defendant intends to deprive his creditors of the full amount listed in his bankruptcy petition).

Second, Harley intended to defraud Irene Randall of $500,000 by claiming to own $700 billion in assets and requesting a $500,000

---

[3]   Pursuant to U.S.S.G. § 2B1.1, App. Note 3(P)(i), "interest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon rate of return, or other similar costs are excluded from loss." Thus, the interest that Mr. Silverstein was promised on his loan/ investment to Harley is being excluded.  <u>See generally United States v. Jimenez, 513 F.3d 62, 86 (3d Cir. 2008)</u> (declining to state whether rule in <u>United States v. Sharma, 190 F.3d 220, 228 (3d Cir. 1999)</u>, which held that "bargained for interest" was not excluded from loss survived the 2001 amendment).

investment from her on that basis.  PSR, ¶ 13.  Count 11 of the
indictment related to the Randall fraud.

Third, in addition to the intended loss in the bankruptcy fraud
scheme and the Randall transaction, Harley intended to defraud the
Federal Reserve Bank of New York of $1 billion by making repeated
demands for $1 billion based on various fraudulent documents he
supplied it indicating he had unrestricted bond power over billions of
dollars in Federal Reserve assets.  PSR, ¶ 14.

Fourth, Harley also intended to defraud several financial
institutions of $1 billion by attempting to negotiate two fraudulent
$500,000 checks he claimed were being held by the Federal Reserve
Bank of New York and by using those funds to collateralize loans from
those institutions.  PSR, ¶ 5.

Thus, the government submits the intended loss is well in excess
of $1 billion.  Pursuant to U.S.S.G. § 2B1.1(b)(1)(P), losses in excess of
$550 million increase the base offense level by thirty levels.

Harley's objection to the loss calculation fails to specify the basis
for his objection.  Thus, the objection should be overruled.

Harley's next objection relates to the two-level increase in his offense level because the offense conduct involved a misrepresentation or other fraudulent action during the course of the bankruptcy petitions.  PSR, ¶ 31.  Once again, Harley gives no basis for his objection.  The evidence showed that Harley misrepresented his assets and liabilities in the bankruptcy.  For example, Harley claimed that he owned $700 million in oil reserves in Texas and $765 million in total assets.  PSR, ¶ 17-18.  He also omitted $168,000 in restitution he owed the United States and over $1 million he owed the SEC from his prior felony conviction.  Id.  Thus, this objection should be overruled.

Harley's final objection is to paragraph 35 of the PSR, which relates to obstruction of justice.  Since no increases were made for obstruction of justice, this objection is moot.

The government submits the guideline calculation results in a total offense level of 43 and with a criminal history category of III.  The guideline range is life.[4]

---

[4]   Under the amended guidelines, Harley could be given an additional four levels because the loss resulted in substantial financial hardship to five or more victims.  See U.S.S.G. § 2B1.1(b)(2)(B).  Under

B.    __Departures__.

The PSR indicates that there appear to be no aggravating or mitigating circumstances warranting a departure.  PSR, ¶ 89.  The government agrees, and Harley has not requested a departure.

C.    __Individual Assessment of Relevant Sentencing Factors__.

The final step to the sentencing process is for the Court to exercise its discretion by considering all the § 3553(a) factors and to determine the appropriate sentence.  The government submits the following factors should be considered:

(1)    __The nature and circumstances of the offense and the history and characteristics of the defendant__.

Harley is no stranger to the criminal justice system.  As reflected in the PSR, Harley has been continually involved in fraudulent activities since the age of 25.   PSR, ¶ 40-46, 50-57.  He appears to have

---

the earlier version of the guidelines, there was a two-level enhancement if the offense involved ten or more victims.  Harley did not receive any additional increase based on the number of victims in the PSR.  Thus, it appears the older version of the guidelines is more beneficial to Harley and should be used here.  See U.S.S.G. § 1B1.11(a)(b)(1); Jimenez, 513 F.3d at 86 (Courts apply the guidelines in effect at the time of sentencing unless those guidelines expose the defendant to a higher sentence).

never held a legitimate job and appears to have engaged in criminal activity as his sole means of support for his entire life.

The culmination of Harley's criminal conduct should have been in 2001 when he was sentenced to five years' imprisonment for defrauding dying AIDS patients by claiming to have discovered a miracle cure for AIDS when, in reality, he gave them nothing more than an ozone enema.  PSR, ¶ 46.  This despicable act should have ended his criminal career, but upon release from prison and while on supervised release, he immediately began to defraud other victims by claiming to own vast oil reserves in Texas and billions of dollars held by the Federal Reserve Bank.

Finding gullible victims was a full-time job for Harley, and the evidence showed he spent considerable time trolling the internet for unsuspecting victims.  Despite the fantastic nature of his claims, he was successful and was able to live off the proceeds of his criminal activities, supplementing his meager social security income in order to purchase expensive new cars using his victims' money.  He victimized the blind,

the feeble, and the poor with no regard for the consequences of his
actions.

      (2)   **<u>The need for the sentence imposed to reflect the
seriousness of the offense, to promote respect for the
law, and to provide just punishment</u>**.

Harley's crimes are egregious by any standard.  While the actual
out-of-pocket losses may not be as substantial as in some other cases,
the victims here suffered enormous financial hardships as a result of
the money he stole from them.  Many of the victims, like Mr. Schufford,
Mr. Falls, and Mr. Bunche, borrowed the money to invest with Harley
from friends and family.  Others, like Ms. Kelly, were duped into giving
away disability payments meant to compensate them for serious
medical issues.  Except for Mr. Casselle, none of the victims were people
of great wealth.  Rather, they were ordinary people who needed this
money for ordinary living expenses.

The two victim-impact statements represent the impact felt here
by the victims:

Mr. Silverstein lost $259,500, and as reflected in his victim-impact statement, that money was needed to care for his wife, Nina, who suffered from severe dementia:

> Now, I do not know how my wife and I are going to make it to our last days. How am I going to be able to care for my Nina at home? Especially now, that I need care at home for myself. I can only hope we are able to get some monies back.
>
> This situation has caused me great distress. I am a disabled American veteran and the sole caregiver for my wife and really wish I had not been targeted for this scam. I could use the monies this situation has cost me, not only the money that Richard Harley took from me, but all the monies I have spent in legal fees trying to get it back.
>
> I believe Richard Harley will not stop scamming innocent, vulnerable people and since this is not the first time he has been caught, he seems to be making a career out of it.
>
> I would feel a lot better about my situation knowing that my country, my state, and the judicial system which I support, believed that scam artists are dangerous and should be put away from the public for the protection of mankind.

Mary Ann Alexander, who is blind, only lost $2,500, but the Court will recall her tearful testimony because she felt responsible for losing her daughter's college money.  Here is what she says in her victim-impact letter:

> While the crime against my family perpetrated by Richard Harley occurred a number of years ago, it effects have been long lasting.  Most importantly, my daughter has a larger school loan than she might have had were it not for his thievery.
>
> During the time I tried to retrieve these funds from Mr. Harley, I was as close to being destitute as I have ever been.
>
> I am blind, was a single parent and between my Social Security Disability income and my underpaid employment as a legal assistant, I was barely making ends meet.  I vividly remember weeks where even purchasing groceries was questionable.  By the grace of God, I made it through this time and hope never to be victimized in this way again.  It is unfortunate that people like Mr. Harley can be so sociopathic that they can deceive even those of us who heretofore had considered ourselves intelligent.  Now, having met some of his other victims, I can only surmise that he was very good at finding the right victim at their most vulnerable time.
>
> I believe that if Mr. Harley is not prosecuted to the fullest extent of the law, he will

> continue to perpetrate crimes like those for which
> he was convicted.  I believe that any leniency
> would feed his arrogance and be a motivating
> factor in continued victimization of the
> unsuspecting and vulnerable.

The government agrees with Mr. Silverstein and Ms. Alexander.

Harley is dangerous and deserves a lengthy sentence to protect others

from the same fate that they suffered at Harley's hands.

### (3)   <u>To afford adequate deterrence</u>.

Harley is beyond rehabilitation, but others who are similarly

situated should view this sentence as a warning not to engage in the

same type of behavior.  Harley was given a light sentence for his prior

AIDS scam and committed this crime as soon as he got out of prison.

Other individuals contemplating a return to a life of crime must be

deterred from the sentence imposed on Harley.

### (4)   <u>To protect the public from further crimes of the defendant</u>.

As stated above, only incarceration will protect the public from

Harley.  Harley's criminal record speaks for itself in this regard.  He is

beyond redemption.

(5)   <u>The need to provide restitution</u>.

The victims of this offense are well aware that it is extremely unlikely they will ever receive any money from Harley.  After all, he has never paid any of the victims from his last fraud, despite court-ordered restitution totaling $168,000 and a judgment of over $1 million owed to the SEC.  Harley has no legal source of income besides his social security payments so there is no reason to allow him to remain free in the hope he will make payments to the victims.

IV.   <u>CONCLUSION</u>.

WHEREFORE, for the reasons stated above, the United States recommends that Harley receive a sentence of twenty-five years' imprisonment, restitution of $318,800, a three-year term of supervised release, and a statutory assessment of $2,300.00.

Respectfully submitted,

PETER J. SMITH
United States Attorney

 s/ Bruce Brandler
Bruce Brandler
Assistant U.S. Attorney
Chief, Criminal Division

-16-

Attorney I.D. No. PA62052
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, Pennsylvania  17108-1754
(717) 221-4482
(717) 221-4493 (Facsimile)
bruce.brandler@usdoj.gov (Email)

Date:  November 10, 2015

PJS:BB:nl

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIM. NO. 3:CR-12-00224 |
| | ) | |
| v. | ) | |
| | ) | (CAPUTO, J.) |
| RICHARD J. HARLEY, | ) | |
| | ) | |
| Defendant. | ) | (ELECTRONICALLY FILED) |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on November 10, 2015, she served a copy of the attached:

### GOVERNMENT'S SENTENCING MEMORANDUM

by electronic filing to the person hereinafter named:

Joseph A. O'Brien, Esquire
OLIVER, PRICE & RHODES
at jaob@oprlaw.com

s/ Naomi Losch
Naomi Losch
Legal Assistant